**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS NUTTER, et al., | ) | Case No. 2:19-cv-02462 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted against it in plaintiffs' Amended Complaint (Doc. 33). The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:     /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        Stephen E. Dutton (0096064)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                bricker@carpenterlipps.com
                barthel@carpenterlipps.com
                dutton@carpenterlipps.com

        Special Counsel for Defendant
        The Ohio State University

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      <u>INTRODUCTION</u>.**

The 46 plaintiffs in the above-captioned action attended The Ohio State University ("OSU") between 1977 and 2007—13 to 43 years ago.  They are suing OSU related to the conduct of Dr. Richard Strauss, which occurred between 1979 and 1998—22 to 41 years ago.

OSU condemns Strauss' conduct and the university's failure at the time to prevent the abuse, and expresses its regret and sincere apologies to each person who endured Strauss' abuse, including the plaintiffs herein.  Despite the time-barred nature of plaintiffs' claims, OSU has attempted to do the right thing with all plaintiffs.  OSU already has settled 162 of the survivors' claims.  On April 17, 2020, the Court directed the non-settling plaintiffs and OSU to engage in "parallel mediation and litigation efforts," and further ordered the non-settling plaintiffs to file amended complaints and OSU to respond.  Consistent with that order, mediation remains ongoing with all remaining plaintiffs, including the plaintiffs in this case.  But plaintiffs are filing complaints, or amended complaints, and pursuant to this Court's order, Ohio State is filing this, its legal response.  OSU hopes the remaining plaintiffs will agree to settle on the same basis as the 162 settled plaintiffs.

The instant motion to dismiss is ***not*** directed toward plaintiffs' claims of injury.  Rather, while respectful of plaintiffs and their claimed injuries, OSU maintains that plaintiffs' proffered legal causes of action are ***legally*** deficient on their face and should be dismissed.

First, without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred.  The Supreme Court of the United States has observed that statutes of limitations are "vital to the welfare of society"; are "found and approved in all systems of enlightened jurisprudence"; and "promote

1

repose by giving security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). The Supreme Court has explained that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Based on these policies, courts across the country have consistently dismissed Title IX claims alleging sexual misconduct that occurred decades ago.

The statute of limitations for plaintiffs' Title IX claims (First and Second Causes of Action) is two years. The sexual abuse alleged in plaintiffs' amended complaint occurred between two and four decades ago, between 1979 and 1998. Plaintiffs did not file their initial complaints until June 12, 2019 (*Nutter*), October 4, 2019 (*Roehlig*), March 26, 2020 (*Vazquez*), or June 9, 2020 (*Nutter* amended complaint). The two-year limitations period expired long ago, and plaintiffs' Title IX claims should be dismissed.

Additionally, plaintiffs purport to state a claim for fraudulent concealment (Third Cause of Action). Fraudulent concealment is neither an independent cause of action nor a basis to toll the statute of limitations on plaintiffs' Title IX claims. It too should be dismissed.

Further, plaintiffs' claim for unlawful retaliation (Fourth Cause of Action) fails to state a claim. Among other things, no plaintiff alleges he suffered the required adverse "school-related" action at the time of the alleged retaliation.

Finally, plaintiffs' Section 1983 claim (Fifth Cause of Action) is barred because OSU is entitled to immunity pursuant to the Eleventh Amendment; OSU is not a "person" for purposes of

Section 1983; and the applicable two-year statute of limitations has expired.

In filing this motion to dismiss, OSU is not ignoring or being dismissive of plaintiffs' factual allegations and remains committed to the ongoing mediation. But statutes of limitations and the constitutional principle of immunity, and the other defenses asserted herein, are critical attributes of our system of laws. Here, plaintiffs' claims are legally barred.

## II.   PLAINTIFFS' AMENDED COMPLAINT.

Thirty-five of the 46 plaintiffs in the above-captioned action filed their initial complaints against OSU on June 12, 2019, October 4, 2019, or March 26, 2020, and their amended complaint on June 9, 2020.[1] *See* Complaints (Doc. 1) in *Nutter*, *Roehlig*, and *Vazque*; Am. Compl. (Doc. 33) in *Nutter*. Eleven of the forty-six (46) plaintiffs are new plaintiffs who asserted claims against OSU for the first time in the June 9, 2020 amended complaint. Am. Compl. (Doc. 33) in *Nutter*.[2]

Plaintiffs are former OSU student-athletes who attended OSU between 1977 and 2007.[3] *See id*. at ¶¶ 298, 362. They allege that former OSU physician, Dr. Richard Strauss, sexually molested, assaulted, abused, and/or harassed them, and/or that they experienced a sexually hostile environment at Larkins Hall between 1979 and 1998—when Strauss was employed at OSU. *Id*. at ¶¶ 5, 25(f), 469, 488, 534, 536. Plaintiffs bring claims against OSU pursuant to Title IX (First and Second Causes of Action); fraudulent concealment (Third Cause of Action); unlawful retaliation pursuant to Title IX (Fourth Cause of Action); and violation of 42 U.S.C. § 1983 (Fifth Cause of Action).

Strauss worked at OSU from 1978 to 1998, and died in 2005. *Id*. at ¶¶ 5, 434-435, 442.

---

[1] Unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

[2] The plaintiffs who are newly named in the June 9, 2020 amended complaint are: Peter Nathanson, Jeffrey Ladrow, Anthony Sentieri, and John Does 12-19.

[3] Plaintiff Michael Caldwell alleges he did not participate in OSU varsity athletics. *Id*. at ¶ 161. Plaintiff John Doe 5 alleges he was a student trainer at OSU. *Id*. at ¶¶ 303-304.

Thus, plaintiffs' claims are based on acts alleged to have been committed 22 to 41 years ago, by someone who ceased being employed at OSU 22 years ago, and who died 15 years ago.

## III.   FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 12(b)(1) STANDARDS.

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Dismissal under Fed. R. 12(b)(6) is proper "if it is apparent from the face of the Complaint" that the statute of limitations has run. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). *See also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (affirming dismissal based on statute of limitations bar where "the allegations in the complaint affirmatively show that the claim is time-barred"); *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."); *Arandell Corp. v. Am. Elec. Power Co.*, No. 2:09-CV-231, 2010 WL 3667004, at *4, *8 (S.D. Ohio Sept. 15, 2010) (Watson, J.) (dismissing based on statute of limitations) (citing *Hoover*, 958 F.2d at 744).

Additionally, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's subject-matter jurisdiction. "It is well established that states possess certain immunities from suit in federal courts." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). Where "subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## IV.   PLAINTIFFS' TITLE IX CLAIMS (FIRST AND SECOND CAUSES OF ACTION) ARE BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

Plaintiffs first attempt to state claims pursuant to Title IX.[4]  *See* Am. Compl. at ¶¶ 479-513. Title IX does not provide a statute of limitations.  *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts").  When a federal statute, such as Title IX, does not provide a statute of limitations, courts "borrow[] . . . the state law of limitations governing an analogous cause of action."  *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980).  Accordingly, courts apply "state personal injury limitation periods to Title IX" claims.  *Lillard*, 76 F.3d at 729; *accord King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) (collecting cases).  In Ohio, the statute of limitations for personal injury is two (2) years.  *See* OHIO REV. CODE § 2305.10(A).  Thus, the statute of limitations applicable to plaintiffs' Title IX claims is two years.  *See Lillard*, 76 F.3d at 729; *Giffin v. Case W. Reserve Univ.*, No. 98-3267, 1999 WL 238669 at *1-2 (6th Cir. April 13, 1999).

Even though Title IX borrows Ohio's personal injury statute of limitations, federal law determines when a Title IX claim accrues.  *King-White.*, 803 F.3d at 762; *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009).  The "standard rule" is that accrual occurs—and the limitations period begins to run—"when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384,

---

[4] Plaintiffs' amended complaint divides their Title IX claims into two sub-categories:  "Violations of Title IX" (First Cause of Action) and "Deliberate Indifference to Prior Sexual Harassment" (Second Cause of Action).  Neither the Sixth Circuit nor any district court within the Sixth Circuit, however, has affirmatively recognized the two sub-categories as separate causes of action.

388 (2007).

The United States Supreme Court recently warned that courts should not apply the discovery rule to delay the accrual of a claim brought pursuant to a federal statute unless the statute specifically mandates it. *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (rejecting an "expansive approach to the discovery rule" because courts should not "enlarge[]" federal statutes). The *Rotkiske* Court explained that courts should not "read in" the discovery rule to federal statutes because "Congress has shown that it knows how to adopt" the discovery rule if it chooses to do so, as evidenced by Congress's "enact[ment] [of] statutes that expressly include [] language . . . setting limitations periods to run from the date on which the violation occurs *or the date of discovery of such violation*." *Rotkiske*, *Id.* at 361 (citing numerous statutes). As discussed above, Title IX is a judicially implied right of action which itself does not set forth a statute of limitations, let alone, expressly incorporate the discovery rule. Thus, applying the discovery rule to Title IX claims requires a judicial implication (application of the discovery rule) upon another judicial implication (a private right of action). Pursuant to *Rotkiske*'s mandate, judges should avoid this. The discovery rule does not apply to delay the accrual of plaintiffs' Title IX claims.

Courts, including the Sixth Circuit, the Southern District of Ohio, and other district courts within the Sixth Circuit, have consistently held that a Title IX claim based on allegations of sexual assault, abuse, or harassment accrues at the time of the assault, abuse, or harassment itself. *See*, *e.g.*, *Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (Title IX claim accrued at time student was sexually abused by her high school coach); *Giffin*, 1999 WL 238669 at *1 (Title IX claim accrued at time of sexual harassment); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 991 (S.D. Ohio 2018) (Title IX claim accrued at the time of the sexual harassment); *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (Title IX claim

accrued on the date of the last sexual assault); *Anderson*, 616 F.Supp.2d at 668 (Title IX claim "accrued at the time of the alleged abusive acts" by school employees).[5]

Plaintiffs collectively allege that Strauss "sexually molested, assaulted, abused, and sexually harassed the Plaintiffs" between 1979 and 1998 "in one or more of the following ways:"

a.  "Dr. Strauss extremely manipulated or stimulated his student-patient's genitals, which included unwanted oral sex, anal digital penetration, masturbation, attempted masturbation, and fondling that caused ejaculation or near ejaculation;"

b.  "Dr. Strauss fondled the student-patient to the point of erection or near erection;"

c.  "Dr. Strauss performed prolonged and/or medically unnecessary genital and rectal exams;"

d.  "Dr. Strauss committed other inappropriate and abusive practices toward his student-patients such as unnecessary nudity of the student-patient, excessive touching and/or groping of the student-patient, verbal commentary and inappropriate questions, lack of examination gloves, inappropriate physical position and/or invasion of space of the student-patient, performing treatments outside of a clinical setting, and 'quid pro quo' arrangements with the student-patient; and"

e.  "Dr. Strauss inappropriately showered alongside student-patients, loitered in student-athletes locker rooms, engaged in voyeuristic behavior, and initiated fraternization with student-patients by calling their residences, inviting them to lunch/dinner and paying for their meals, and asking to take

---

[5] *See also King-White*, 803 F.3d at 762 (Title IX claim accrued when teacher abused student); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440-441 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015) (Title IX claim accrued at time of sexual abuse); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (comparing a Title IX claim based on sexual abuse to a battery, which "is complete upon physical contact, even though there is no observable damage at the point of contact," and holding plaintiff's Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000) (Title IX claim accrued at time of abuse); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. CIV-09-533-L, 2010 WL 152138, at *3 (W.D. Okla. Jan. 14, 2010) (plaintiff "impliedly concede[d]" that Title IX claim "had to have accrued" when the plaintiff was a student at the school because the alleged sexual abuse by the school employee only "occurred while she was a student at the school"); *Padula v. Morris*, No. 205-CV-00411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (Title IX claim "accrued on the last date Plaintiffs[] suffered an incident of sexual harassment"); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (Title IX claim "accrued when [the student] knew or had reason to know of her injury—October 29, 1997[,]" the date her professor allegedly "sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately"); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (Title IX claim accrued when alleged sexual assault from hazing occurred).

pictures of the student-patients to help them start a modeling career."

*Id.* at ¶¶ 444, 486.

Each plaintiff's specific and detailed allegations of abuse are set forth in the chart attached hereto as Appendix A. Numerous plaintiffs specifically allege they complained about Strauss' conduct and/or the sexual environment at Larkins Hall. *See*, *e.g.*, Yetts, *id.* at ¶ 54; Knight, *id.* at ¶ 94; Vincent DiSabato, *id.* at ¶ 207; Vazquez, *id.* at ¶ 218; Mondalek, *id.* at ¶ 236; Leo DiSabato, *id.* at ¶ 242; Doe 1, *id.* at ¶ 278; Doe 5, *id.* at ¶ 310; Doe 6, *id.* at ¶¶ 94, 322; Doe 7, *id.* at ¶¶ 332, 342; Doe 8, *id.* at ¶¶ 346, 347; Doe 10, *id.* at ¶ 366; Doe 12, *id.* at ¶ 384; Doe 13, *id.* at ¶ 393; and Doe 17, *id.* at ¶ 421; *see also id.* at ¶ 504 (alleging "[n]umerous complaints were made by the Plaintiff wrestlers" to "high-ranking OSU employees" and itemizing with specificity the types of complaints that were made). According to the amended complaint, each plaintiff's experiences with Strauss and/or at Larkins Hall were "so severe, pervasive, and objectively offensive" that they caused each plaintiff to suffer, and continue to suffer, "emotional distress, physical manifestations of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life[,]" "sleep deprivation, physical illness,. . . pain of the mind and body." *Id.* at ¶¶ 496, 497, 499, 503, 512, 519(c), 540, 551.

Based on the well-established and consistent law discussed above, plaintiffs' Title IX claims accrued between 1979 (at the earliest) and 1998 (at the latest), when the first and last encounters with Strauss by a plaintiff are alleged to have occurred. *See id.* at ¶¶ 5, 25(f), 469, 488, 534, and 536. Plaintiffs did not, however, file suit until June 12, 2019, October 4, 2019, March 26, 2020, or June 9, 2020. *See* Complaints (Doc. 1) in *Nutter*, *Roehlig*, and *Vazquez*; Am. Compl. (Doc. 33) in *Nutter*. Thus, plaintiffs' Title IX claims were filed approximately 22 to 41 years after the applicable two-year statute of limitations had expired. As a matter of law, plaintiffs' Title IX

claims are time-barred and should be dismissed with prejudice.

## V.    THE DISCOVERY RULE DOES NOT APPLY TO DELAY THE ACCRUAL OF PLAINTIFFS' TITLE IX CLAIMS.

Plaintiffs allege they did not discover that Strauss' conduct constituted sexual abuse, assault and/or harassment until the Perkins Coie Report was released in May 2019. *Id*. at ¶ 25(a).

As discussed above, the discovery rule does not apply pursuant to the United States Supreme Court's holding in *Rotkiske*. Even where plaintiffs have attempted to apply the discovery rule to Title IX claims, courts have consistently rejected it. The Supreme Court "ha[s] been at pains to explain that" the limitations period begins to run upon "discovery of the ***injury***, not discovery of the other elements of a claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *see also Anderson*, 616 F. Supp. 2d at 668 (stating in a Title IX action, that "[i]n applying a discovery accrual rule ... discovery of the injury, not discovery of the other elements of the claim, is what starts the clock. Otherwise stated, a plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful") (quoting *Rotella*, 528 U.S. at 555 and *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001)); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) ("'[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be") (quoting *Rotella*, 528 U.S. at 555-556).

Moreover, under the discovery rule, the limitations period begins when a person "has *reason* to know of his injury"—even if he does not have actual or complete knowledge of his injury until later. *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794);

*Bowling*, 2017 WL 4512587, at *1 (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)).

Importantly, accrual "is an objective inquiry[.]"  *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016).  That is, courts do not ask whether the particular plaintiff in fact *knew* about his injury, but rather, whether the "event" at issue—here, the complained of conduct by Strauss—"should have alerted the typical lay person to protect his or her rights." *Id.*  "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself.'" *Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 394 (6th Cir. 1975) (quoting *Wood*, 101 U.S. at 143). "[T]he plaintiff bears the burden of 'plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier[.]'" *Owner Operator Indep. Drivers Ass'n,* 540 F. Supp. 2d at 929 (quoting *Auslender v. Energy Mgmt. Corp*., 832 F.2d 354, 356 (6th Cir. 1987)).

Here, plaintiffs' assertion that they did not recognize Strauss' conduct constituted sexual abuse, assault, or harassment is implausible given the specificity of each plaintiff's allegations, as set forth above and in Appendix A.  *See Doe v. Pasadena Hosp. Assn., Ltd*., 2020 WL 1529313, *5 (C.D. Cal. Mar. 31, 2020) ("[T]he Court need not blindly accept Plaintiff's allegation that she only became aware of" sexual abuse by her gynecologist when a newspaper published a report about the physician's misconduct "because the factual allegations directly contradict such an assertion.").  As discussed previously, numerous plaintiffs specifically allege they complained about Strauss' conduct and/or the sexual environment at Larkins Hall.  *See* Am. Compl. at ¶¶ 54, 207, 218,  236, 242, 310, 322, 332, 342, 346, 347, 366, 384, 393, 421; *see also id*. at 504 (alleging "[n]umerous complaints were made by the Plaintiff wrestlers" to "high-ranking OSU employees" and itemizing with specificity the types of complaints that were made).  At the very least, the alleged conduct would have caused each plaintiff to be suspicious of a possible injury at the time

the sexual assault, abuse, or harassment occurred, thereby triggering the accrual of his Title IX claims. *Helm*, 642 F. App'x at 561; *Dayco Corp.*, 523 F.2d at 394. And this Court can reasonably infer that such suspicion would have only increased in the intervening years, when each plaintiff presumably obtained medical treatment that did not involve a physician engaging in the type of conduct toward them that Strauss did. *See* Am. Compl. at ¶¶ 42-432; Appendix A. *See Doe v. Univ. of S. Cal.*, 2019 WL 4228371, at *3 (C.D. Cal. Apr. 18, 2019) ("Plaintiff's argument that she could not have discovered Dr. Tyndall's examination constituted sexual misconduct until 2018 is implausible, since Plaintiff undoubtedly had further gynecological examinations by other medical professionals after Dr. Tyndall over the 27 years since and would have had a basis to conclude that Dr. Tyndall's conduct fell outside of medically acceptable standards.").

Courts have consistently rejected efforts by plaintiffs to delay the accrual of their Title IX claims based on the discovery rule. *See*, *e.g.*, *Gilley*, 572 F. App'x at 308 ("Even if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not "exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue); *Anderson*, 616 F.Supp.2d at 671 ("Plaintiffs were sufficiently aware of facts that should have aroused their suspicion of the claims against Defendants at the time of their injuries . . . There is no indication that Plaintiffs exercised any diligence, ordinary or otherwise, to uncover the source of their injuries prior to the expiration of the statute of limitations for their claims, and the Board is entitled to be free of such stale claims") (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).[6]

---

[6] *See also Twersky*, 993 F. Supp. 2d at 443-439 (Title IX claim accrued at the time high school students were abused, not two decades later when a newspaper article reported school administrator's admission that he and other

Courts also have refused to find a delayed accrual of Title IX claims where, as here, plaintiffs were aware of: the acts complained of, the abuser's identity, and that the abuser was an employee of the school subject to potential liability under Title IX. *See, e.g.*, *Anderson*, 616 F. Supp. 2d at 668, 671 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *King-White*, 803 F.3d at 762 (Title IX claim accrued at time of abuse where student "was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher"); *Twersky*, 579 F. App'x at 9-10 (Title IX claim accrued at time of abuse because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers"); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 991 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) ("Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover"); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 (4th Cir. 2007) (plaintiff was required to bring her Title IX claim within "two years after she turned eighteen" where it was "beyond dispute that

---

administrators had been aware of the risk of sexual abuse when it was occurring); *King-White*, 803 F.3d at 762 (Title IX claim accrued when plaintiff was abused by teacher, not when plaintiff learned nearly two years later during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse); *Varnell*, 2013 WL 12146483, at *6-*7 & n.4, *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013), *aff'd*, 756 F.3d 1208 (10th Cir. 2014) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct *when it was occurring*" and the school district could not now be liable because its "failure to prevent the abuse could only occur while the abuse was ongoing").

plaintiff knew she had been injured in 1984" and "knew the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty"—"her principal and her school board"—"by the time she reached majority").

Courts have likewise refused to apply the discovery rule to similar claims involving sexual abuse. *See*, *e.g.*, *Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1529313, at *5 (finding plaintiff had "reason to suspect . . . wrongdoing, causation, and harm" at the time abusive gynecological examinations occurred"); *Doe v. USC*, 2019 WL 4228371, at *4 ("The fact that Plaintiff only learned [in 2018] that she was not the only female patient abused by Dr. Tyndall [during a gynecological exam] does not affect Plaintiff's knowledge of the abuse she received back in 1991"); *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, at *8 (D.D.C. 2019) (holding that the discovery rule did not delay accrual of a claim where a survivor of sexual abuse "recall[ed] that abuse but d[id] not appreciate its wrongfulness" at the time).

Virtually all of the above cases in which courts have considered (and rejected) the discovery rule as a basis to delay the accrual of Title IX claims pre-date the Supreme Court's decision in *Rotkiske* which, as discussed above, holds that the discovery rule does not apply to federal statutes (like Title IX) that do not expressly incorporate the discovery rule. *Rotkiske*, 140 S. Ct. at 360–61. Even applying the discovery rule to plaintiffs' Title IX claims, however, the same result is required as in the numerous cases cited above. Taken as true, the allegations in plaintiffs' amended complaint demonstrate their claims accrued between 1979 (at the earliest) and 1998 (at the latest), when the first and last encounters with Strauss by a plaintiff are alleged to have occurred. *See id.* at ¶¶ 5, 25(f), 469, 488, 534, and 536. Thus, the two-year statute of limitations for the last plaintiff to bring his Title IX claims expired in 2000, at the latest. Plaintiffs did not file suit until June 12, 2019, October 4, 2019, March 26, 2020, or June 9, 2020. *See* Complaints (Doc.

1) in *Nutter*, *Roehlig*, and *Vazquez*; Am. Compl. (Doc. 33) in *Nutter*. Thus, plaintiffs' Title IX claims (First and Second Causes of Action) were filed approximately two to four decades after the applicable statute of limitations had expired and should be dismissed.

## VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT-CONCEALMENT <u>(THIRD CAUSE OF ACTION)</u>.

As their Third Cause of Action, plaintiffs purport to assert an independent claim for fraudulent concealment. *See* Am. Compl. at ¶¶ 514-526. The Supreme Court of Ohio has held, however, that fraudulent concealment is ***not*** an independent cause of action under Ohio law. *See Richards v. St. Thomas Hosp*., 24 Ohio St. 3d 27, 29 n.3 (1986); *Harmon v. Shehata*, No. C.A. WD-87-11, 1987 WL 17765, at *2 (Ohio Ct. App. Sept. 30, 1987) ("the Ohio State Supreme Court determined that fraudulent concealment was not an independent cause of action").

Plaintiffs' allegations suggest they may be attempting to rely upon the fraudulent concealment doctrine as a basis to toll the statute of limitations on their Title IX claims. Plaintiffs allege that OSU's continued employment of Strauss amounted to fraudulent representations that Strauss' conduct was medically appropriate and not sexual assault, which prevented plaintiffs from discovering "a possible lawsuit or cause of action that he might have against OSU." Am. Compl. at ¶¶ 517-521. Plaintiffs are wrong. Fraudulent-concealment tolling does not apply here.

First, "[i]t is well established . . . that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012); *Lutz v. Chesapeake Appalachia, L.L.C*., 717 F.3d 459, 475 (6th Cir. 2013) ("The right to rely upon fraudulent concealment 'never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.") (quoting *Zemcik v. LaPine Truck Sales & Equip. Co*., 706 N.E.2d 860, 865 (Ohio Ct. App. 1998)). As explained above, each

plaintiff knew or reasonably should have known of his injury at the time of his abuse. *See supra* at V. Hence, plaintiffs' fraudulent concealment allegations fail for the same reason their discovery rule allegations do.

The Ohio Supreme Court's decision rejecting fraudulent concealment in *Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268 (2006) is instructive.[7] There, the Ohio Supreme Court held that fraudulent-concealment tolling did not apply to claims asserted in 2004 arising from abuse that occurred between 1980 and 1983. The plaintiff argued tolling should apply because it was not until 2002 that he "first learned that there were other victims" of the same church employee. *Id.* at 271, 273. In granting the motion to dismiss, the court stated:

> We hold that Doe's cause of action was not concealed from him—i.e., he knew or should have known all of the elements of potential causes of action against the archdiocese within two years after he reached majority. Doe concedes in his complaint that he at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator. Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against the archdiocese.

*Id.* at 279. The same is true here. Each plaintiff alleges he knew the identity of his perpetrator (Strauss) and the employer of his perpetrator (OSU). Am. Compl. at ¶¶ 42-432; Appendix A. "Thus, he had all of the facts necessary to investigate and prosecute his potential causes of action against [OSU]." *Doe,* 849 N.E.2d at 279.

Other courts have reached the same result under the same or similar fraudulent concealment standards. *See Gilley*, 572 F. App'x at 308-309 (Board's failure to report the alleged abuse to governmental authorities did not constitute fraudulent concealment of plaintiff's Title IX claims

---

[7] Even though federal law determines accrual, where, as here, a federal cause of action borrows a state statute of limitations, coordinate tolling principles and rules (other than the discovery rule, which is determined by federal law) are governed by state law, to the extent they are not inconsistent with federal law. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989)); *Dotson v. Lane*, 360 F. App'x 617, 619 n.2 (6th Cir. 2010); *Gainor v. Worthington City Schools*, No. 2:11-CV-561, 2013 WL 6587869, *7 (S.D. Ohio Dec. 13, 2013).

where plaintiff was aware of facts that "should have aroused her suspicion that she was being sexually abused"); *Anderson v. Fayette Cty.*, 616 F. Supp. 2d at 671 (similar); *Doe v. USC*, 2019 WL 4228371 at *5 (finding that "even if USC attempted to conceal Dr. Tyndall's improper behavior for years following Plaintiff's examination," the plaintiff's "own allegations show[ed] that she independently had reason to believe that Dr. Tyndall did not conduct the examination . . . according to accepted medical standards."); *Doe v. Pasadena Hospital*, 2020 WL 1529313, at *1, 3-4 (agreeing with Hospital's argument that "fraudulent concealment d[id] not toll Plaintiff's claims" that doctor had "misrepresent[ed] that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice" because the complaint established "actual or presumptive knowledge" of her claims).[8]

In addition, "[f]raudulent concealment requires a showing of affirmative concealment; mere silence or unwillingness to divulge wrongful activities is not sufficient. Instead, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Precious Creation, Inc. v. Mercantile Bank Mortg. Co.*, LLC, 731 F. App'x 498, 501 (6th Cir. 2018); *see also Schubert v. Neyer*, 165 N.E.2d 226, 229 (Ohio Ct. App. 1959). Here, plaintiffs allege that OSU's "mere silence" about Strauss' inappropriate conduct and continued "unwillingness to divulge wrongful activities" in regard to Strauss are "fraudulent material representations." Am. Compl. at ¶¶ 514-521; *Precious Creation*, 731 F. App'x at 515-517, 521. These allegations are insufficient to support fraudulent concealment tolling. *Precious Creation, Inc.*, LLC, 731 F. App'x at 501; *Schubert v. Neyer*, 165 N.E.2d at 229; *see also King-White*, 803 F.3d at 764 (rejecting fraudulent-concealment tolling because the "[p]laintiff's allegations focus[ed] on" the defendants'

---

[8] *See also Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 11 (2d Cir. 2014) (finding fraudulent concealment tolling did not apply to Title IX claims); *King-White*, 803 F.3d at 764–65 (same); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *19 (S.D.N.Y. May 20, 2005) (same).

"failure to act").[9]

## VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNLAWFUL RETALIATION (FOURTH CAUSE OF ACTION) UNDER TITLE IX.

As their Fourth Cause of Action, plaintiffs purport to state a claim for unlawful retaliation against OSU.  Am. Compl. at ¶¶ 527-541.  To state a claim for retaliation, a Title IX plaintiff must allege that (1) he engaged in protected activity, (2) the funding recipient knew of the protected activity, (3) he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action.  *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020).

As an initial matter, plaintiffs improperly devote several paragraphs of their amended complaint to alleging that certain retaliatory acts were committed against Michael DiSabato, "one of the original whistleblowers."  *Id*. at ¶¶ 529- 534.  The allegations related to Mr. DiSabato, however, fail to state a claim against OSU because Mr. DiSabato is ***not*** a plaintiff in this action. Mr. DiSabato is a plaintiff in *Michael DiSabato, et el. vs. OSU*, Case No. 2:19-cv-02237, in which all plaintiffs, including Michael DiSabato himself, have reached a settlement with OSU.  *See DiSabato*, Unopposed Motion and Order Establishing Qualified Settlement Fund (Docs. 39 & 40).

Additionally, plaintiffs' allegations fail to satisfy the Fed. R. Civ. P. 8 notice pleading requirements.  Plaintiffs allege that "some of the Plaintiffs and similarly situated Plaintiffs" and "numerous former athletes" were retaliated against, but fail to allege which particular plaintiffs were retaliated against or identify which individual(s) retaliated against which plaintiff(s). *See* Am. Compl. at ¶¶ 534-536.  Plaintiffs also allege that "former employees of OSU, friends, and/or

---

[9] Plaintiffs' additional allegation that "[n]umerous plaintiffs state that they received and/or witnessed Dr. Strauss administering steroids and/or performance enhancing drugs to athletes at OSU" was another clear indication to plaintiffs that Strauss was engaging in misconduct for purposes of claim accrual under the statute of limitations. Am. Compl. at ¶¶ 524-526.

benefactors of OSU" retaliated against them, but these individuals are **not** OSU.  *Id.* at ¶¶ 534-535, 537.

Importantly, none of the alleged retaliatory acts constitutes "an adverse school-related action."  Title IX prohibits retaliatory actions that cause a reporting plaintiff to be "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under any education program or activity" offered by a federally-funded institution. 20 U.S.C. § 1681(a); *see Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315, 320 (6th Cir. 2017) (the adverse action is an "educational action").  But plaintiffs are **not** students.  Plaintiffs are **former** students.  And they do not allege that any plaintiff suffered an educational or school-related repercussion arising from the alleged retaliatory conduct.[10]  *See, e.g., Prey v. Kruse*, No. 2:08-cv-287, 2009 WL 10679036, at *1–2 (S.D. Ohio June 9, 2009) (holding a non-student, non-employee plaintiff could not bring a Title IX retaliation claim); *Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 964, 970, 974 (S.D. Iowa 2018), *aff'd*, 958 F.3d 679 (8th Cir. 2020) (university's conduct in directing former member of its board of trustees not to frequent off-campus tavern did not deny member access to any "education activity or program" as required to support a Title IX retaliation claim).  For the above reasons, plaintiffs' Fourth Cause of Action fails to state a retaliation claim and should be dismissed.

## VIII.  PLAINTIFFS' SECTION 1983 CLAIM (FIFTH CAUSE OF ACTION) IS BARRED BY THE ELEVENTH AMENDMENT.

"The [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct*

---

[10] In regard to students, examples of "adverse school-related actions" include suspensions, in-class punishment, placement in a different learning group, the denial of an opportunity to take a certain class, issuing a failing grade to a student, failing to make a student aware of networking events, giving a student negative references or recommendations, and refusing to provide a student with a letter of recommendation.  *See, e.g., Gordon*, 686 F. App'x at 321; *Varlesi v. Wayne State Univ.*, 909 F.Supp.2d 827, 852–53 (E.D. Mich. Nov. 14, 2012); *Irrera v. Humpherys*, 859 F.3d 196, 198–99 (2d Cir.2017); *Novio v. New York Academy of Art*, 286 F.Supp.3d 566, 578–79 (S.D.N.Y. Dec. 13, 2017); *Bailey v. New York Law School*, 2017 WL 835190, *7 (S.D.N.Y. Mar. 1, 2017).

*& Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). As a result, states and their instrumentalities are "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). As plaintiffs recognize, OSU is "a public university organized and existing under the laws of the State of Ohio." *See* Am. Compl. at ¶ 39; *see also* OHIO REV. CODE § 3345.011 (recognizing OSU as a "state university"); OHIO REV. CODE § 3335.01, *et seq.* (creating and governing OSU); *Matteson v. Ohio State Univ.*, No. C2-99-1267, 2000 WL 1456988, at *3 (S.D. Ohio Sept. 27, 2000) ("[I]t is well settled that Ohio State University is an instrumentality of the State of Ohio") (collecting cases). The Eleventh Amendment's sovereign immunity thus applies. *See Meng Huang v. Ohio State Univ.*, No. 2:19-CV-1976, 2020 WL 531935, at *6 (S.D. Ohio Feb. 3, 2020) ("As an arm of the state, Ohio State enjoys Eleventh Amendment immunity from federal suits against it."). Because Section 1983 does not abrogate Eleventh Amendment immunity, *see Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 683 (6th Cir. 2018), the Court lacks subject-matter jurisdiction over plaintiffs' Section 1983 claim, and the claim should be dismissed. *See Butler v. Ohio State Univ. Med. Ctr.*, No. 2:06-CV-1075, 2008 WL 11351363, at *2 (S.D. Ohio June 23, 2008) (Watson, J.) (holding the doctrine of sovereign immunity barred plaintiff's Section 1981 and Section 1983 claims because OSU is an arm of the state); *Nuovo v. The Ohio State University*, 726 F.Supp.2d 829, 850 (S.D. Ohio 2010) (dismissing Section 1983 claim against OSU, in part, because the Eleventh Amendment prohibits Section 1983 claims against state entities).

Plaintiffs fail to state a Section 1983 claim for two additional reasons. First, OSU is not a "person" subject to suit under Section 1983. *See Butler*, 2008 WL 11351363, at *3 (Watson, J.) (dismissing Section 1983 claim against OSU Medical Center because it was not a "person" as defined by Section 1983); *Nuovo*, 726 F.Supp.2d at 850 (S.D. Ohio 2010) (dismissing Section

1983 claim against OSU, in part, because OSU is not a "person" for purposes of Section 1983).

Second, like the Title IX claims, courts apply Ohio's two-year personal injury statute of limitations to Section 1983 claims arising in Ohio. *See Monfort Supply Co. v. Hamilton Cty. Bd. of Zoning Appeals*, No. 104CV145, 2006 WL 3703686, *2 (S.D. Ohio Dec. 13, 2006) (Watson, J.) ("The statute of limitation for a section 1983 action arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"). Federal law governs when the two-year statute of limitations for plaintiffs' Section 1983 claims begins to run. *Id.*

As previously discussed, the Supreme Court has held that courts should not apply the discovery rule to a federal statute where, as here, the statute (Section 1983) does not mandate it. *Rotkiske*, 140 S. Ct. 355, 360–61. Additionally, the abuse alleged by plaintiffs occurred between 1979 and 1998. *See* Am. Compl. at ¶¶ 5, 25(f), 469, 488, 534, 536. For the reasons already discussed in Section V, each plaintiff's own allegations establish that he was actually aware, or at the very least should have been suspicious, that he had been injured at the time the sexual assault, abuse, or harassment occurred. At that time, each plaintiff also was aware of the complained of acts, the identity of his abuser (Strauss), and that Strauss was an employee of OSU. Am. Compl. at ¶¶ 42-432; Appendix A. Therefore, based on plaintiffs' own allegations, the statute of limitations for plaintiffs' Section 1983 claim (Fifth Cause of Action) against OSU expired long before the initial complaint was filed. *See Monfort Supply Co.*, 2006 WL 3703686 at *2.

## IX.    **CONCLUSION.**

For the reasons stated above, unless otherwise settled through the ongoing mediation, plaintiffs' Amended Complaint (Doc. 33) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Stephen E. Dutton (0096064)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com
dutton@carpenterlipps.com

Special Counsel for Defendant
The Ohio State University

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically on June 30, 2020. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

<u>/s/ Michael H. Carpenter</u>
Trial Attorney for
Defendant The Ohio State University