IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NICHOLAS NUTTER, et. al.,

        Plaintiffs,                    Case No. 2:19-cv-02462

v.                                 JUDGE MICHAEL H. WATSON
                                 MAG. JUDGE ELIZABETH P. DEAVERS

THE OHIO STATE UNIVERSITY,

        Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
AND PLAINTIFFS' ALTERNATIVE MOTION TO AMEND COMPLAINT**

Now comes Plaintiffs, by and through counsel, and submits the following as their Response
and Memorandum Contra to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint,
which Motion should not be well taken and should be denied for good cause, as set forth in the
accompanying Memorandum In Support attached hereto and incorporated herein as if fully
rewritten.

Alternatively, should this Court find Plaintiffs' Amended Complaint to be defective in any
manner, Plaintiffs hereby seek leave to file a second amended complaint for the reasons also set
forth following.

                                 Respectfully submitted:

                                 */s/ J.C. Ratliff*       ,
                                 J.C. Ratliff (0027898)
                                 Rocky Ratliff (0089781)
                                 *Attorney for Plaintiffs*
                                 200 West Center Street
                                 Marion, Ohio 43302
                                 Telephone: 740/383-6023
                                 Fax: 740/383-2066
                                 Email:attorney.ratliff@gmail.com

1

## TABLE OF CONTENTS

**Pages**

**I.  INTRODUCTION**                                                  **5-7**

**II.  FACTS**                                                        **8-12**

*Whittaker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914,
924-25 (N.D. Ohio 2009)

**III.  LAW AND ARGUMENT**

    **A.  Applicable Legal Standards on Civ. R. 12 Motions**

*Allen v. Andersen Windows, Inc.*, 913 F. Supp 2d 490 (S.D. Ohio 2012)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

*Cataldo v. U.S. Steel Corp.*, 676 F. 3d 542 (6th Cir. 2012)

*Conley v. Gibson*, 355 U.S. 41 (1957)

*Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018)

*Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013)

*Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)

*Fletcher v. University Hospitals of Cleveland*, 120 Ohio St. 3d 167 (2008)

*Foman v. Davis*, 371 U.S. 178 (1962)

*Jones v. Duncan*, 840 F.2d 359 (6th Cir. 1988)

*Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 933 F. Supp. 2d 974,
1016 (S. D. Ohio 2013)

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
507 U.S. 163 (1993)

*Lutz v. Chesapeake Appalachia L.L.C*, 717 F.3d 459, 464 (6th Cir. 2013)

*Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 625(6th Cir. 2017)

*Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp 2d 925 (S.D. Ohio 2008)

*Peterson v. Teodosio*, 34 Ohio St. 2d 161 (1973)

*Rauch v. Day & Night Manuf. Corp.*, 576 F. 2d 697 (6th Cir. 1978)

*Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)

*Smith v. Salem*, Ohio, 2004 FED App. 0160P (6th Cir.)

*Swierkiewicz v. Soremna N.A.*, 534 U.S. 506, 512 (2002)

### B. Plaintiffs' Title IX Claims are not barred by the Statute of Limitations

*Adams v. Ohio Univ.*, 300 F. Supp. 3d 983 (S.D. Ohio 2018)

*Anderson v. Bd. Of Educ. Of Fayette Cty.*, 616 F. Supp 2d 662 (E.D Ky. 2009)

*Bay Area Laundry and Dry Cleaning Pens. Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997)

*Bowling v. Holt Pub. Sch.*, 2017 WL 4512587 (W.D. Mich. May 26, 2017)

*Brewster v. Barnes*, 788 F.2d 985 (4th Cir.1986)

*California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. ___, ___

*Chung v. Pamona Valley Community Hospital*, 667 F.2d 788 (9th Cir. 1982)

*E.E.O.C. v. Penton Industrial*, 851 F.2d 835, 838 (6th Cir.1988)

*Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St. 3d 529 (2011, at ¶7)

*Fonseca v. Consolidated Rail Corp.*, 246 F.3d. 585, 590 (6th Cir. 2001)

*Gilley v. Dunaway*, 572 F. App'x 303 (6th Cir. 2014)

*Griffin v. Case W. Reserve Univ.*, 199 WL 238669 (6th Cir. April 13, 1999)

*Hall v. Ledex, Inc.*, 669 F.2d 397 (6th Cir. 1982)

*Lillard v. Shelby Cty. Bd. of Ed.*, 76 F.3d 716 (6th Cir. 1996)

*Lutz v. Chesapeake Applachia, L.L.C*, 717 F. 3d 459, 470 (6th Cir. 2013)

*Merck & Co. v. Reynolds*, 559 U.S. 633, 644

*North Haven Bd. Of Educ. v. Bell*, 456 U.S. 512 (1982)

*Perez v. Laredo Junior College*, 706 F. 2d 731 (5th Cir. 1983) cert. denied,
464 U.S. 1042, 104 S.Ct. 708 (1984)

*Pike v. City of Mission, Kan.*, 731 F.2d 655 (10th Cir.1984)

*Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 827 (6th Cir. 1981)

*Rotkiske v. Klemm*, No. 18-328, (U.S. Dec. 10, 2019) 589 U.S. ___ (2019), Pp. 6-7

*Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982)

### C. Defendant OSU's Fraudulent Concealment of the Sexual Abuse of Dr. Strauss Tolls the Statute of Limitations

*Allen v. Anderson Windows, Inc.*, 913 F. Supp 2d 490, 515 (S.D. Ohio 2012)

*Bird v. Delacruz*, 411 F. Supp. 2d 891, 895 (S. D. Ohio)

*Brown v. United States*, No. 2:16-cv-0358, 2017 WL 2378375 at 5
(S.D. Ohio June 1, 2017)

*Doe 1 v. Baylor Univ.*, 240 F. Supp 3d 646 (W.D. Tex. 2017)

*Doe 12 v. Baylor Univ.*, 336 F. Supp. 2d 763 (W.D. Tex. 2018)

*Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017)

*In re Arctic Exp. Inc.*, 636 F. 3d 781 (6th Cir. 2011).

*James v. Univ. of Idaho*, 2019 WL 5606828 (D. Idaho Oct. 30, 2019)

*Lonzano v. Baylor Univ.*, 408 F. Supp. 3d 861 (W.D. Tex. 2019)

*Lutz v. Chesapeake Appalachia L.L.C*, 717 F.3d 459, 474 (6th Cir. 2013)

*Piotrowski v. City of Houston*, 51 F. 3d 512 (5th Cir. 1995)
*Precision Instrument Mfg. Co. V. Auto Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)

4

*Scott v. Ambani*, 577 F. 3d 642 (6th Cir. 2009)

*U.S. v. Kubrick*, 444 U.S. 111 (1979)

### D. Plaintiffs have sufficiently stated a Claim for Unlawful Retaliation under Title IX

*Atkinson v. Lafayette College*, 460 F.3d 447, 451-52 (3d Cir. 2006)

*Bass v. Robinson*, 167 F. 3d 1041 (6th Cir. 1999)

*Davis ex rel. Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)

*Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013)

*Fuller v. Mich. Dep't of Transp.*, 580 Fed.Appx. 416, 423 (6th Cir. 2014)

*Gordon v. Traverse City Area Public Schools*, 686 F. App's 315 (6th Cir. 2017)

*Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005)

### E. The Plaintiffs have set forth a sufficient factual basis for their Claims under 42 U.S. Section 1983 and Defendant is not Entitled to Eleventh Amendment Immunity

*Cannon v. University of Chicago*, 441 U.S. 677 (1979)

*City of Canton v. Harris*, 489 U.S. 378 (1989)

*Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991)

*Doe v. School Admin. District No. 19*, 66 F.Supp. 2d 57,60-64 (D.Me. 1999)

*Edelman v. Jordan*, 415 U.S. 651 (1974)

*Ex Parte Young*, 209 U.S. 123 (1908)

*Fitzgerald v. Barnstable*, 129 S. Ct. 788 (2009)

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)

*Foulkes v. Ohio Department of Rehabilitation and Correction*, 33 F. 2d 1229 (6th Cir. 1983)

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992)

*Franks v. Kentucky School for the Deaf*, 142 F. 3d 360 (6th Cir. 1998)

*Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F. 3d 685 (6th Cir, 2000), cert denied, 121 S. Ct 69 (2000)

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)

*Llaguno v. Mingey*, 763 F. 2d 1560 (7th Cir. 1985)

*Martin v. Roeder*, 83 Ohio App. 3d 64 (1992)

*Murrell v. School District No. 1*, 186 F.3d 1238, 1243 (10th Cir. 1999)

*Nihiser v. Ohio Envtl. Prot. Agency*, 269 F. 3d 626 (6th Cir. 2001)

*Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984)

*Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir.1999)

*Vance v. Spencer County Public School Dist.*, 231 F.3d 253 (6th Cir. 2000)

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002)

*Waters v. City of Morristown*, 242 F. 3d 353, 358-59 (6th Cir. 2001)

### F. Defendant OSU's Reference to Mediation and Settlement is Totally Inappropriate and should be Stricken from its Motion

## IV. CONCLUSION

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

This is an action brought by Plaintiffs against their former institution of higher learning, Defendant The Ohio State University, in connection with injury and damage they sustained as a result of sexual abuse and other unlawful conduct of Defendant's team physician, Dr. Richard Strauss, which conduct was fraudulently concealed from the Plaintiffs by Defendant The Ohio State University until on or about May 17, 2019. Contrary to the rationale and argument set forth by Defendant in its Motion to Dismiss, this is not an action against Dr. Strauss. This is an action against The Ohio State University for its deliberate indifference to the abhorrent sexual misconduct suffered by Plaintiffs and its fraudulent concealment of such misconduct in violation of law.

In the First Cause of Action of Plaintiffs' Amended Complaint, they allege violation by Defendant The Ohio State University (hereinafter referred to as "OSU") of Title IX, 20 U.S.C. Section 1681, *et seq.* which requires that universities such as OSU take appropriate action to prevent, investigate and report sexual assault, harassment, misconduct and abuse or allegations of the same on an annual basis.

In their Second Cause of Action, Plaintiffs allege that not only did OSU fail to act and report all the misconduct as described above, but OSU and its administrators concealed the unlawful actions from Plaintiffs and others with deliberate indifference to the sexually hostile culture and sexual abuse suffered by Plaintiffs in OSU's athletic and student health programs.

In their Third Cause of Action, Plaintiffs allege that OSU fraudulently concealed the abuse aforesaid through various means, which precluded Plaintiffs from knowing and/or have reasonable basis to believe that they had been sexually abused, harassed or assaulted.

7

In their Fourth Cause of Action, Plaintiffs allege that they suffered unlawful retaliation for their part in revealing the unlawful acts and/or failures to act of OSU through its various agents.

Finally, Plaintiffs' Fifth Cause of Action alleges that the acts or failure to act by OSU constituted violations of 42 U.S.C. Section 1983.

Plaintiffs seeks damages and declaratory relief against Defendant The Ohio State University.

No discovery has been conducted to date. However, on or about May 17, 2019, OSU released a letter to all members of the OSU Community along with the Independent Investigative Report from Perkins Coie regarding Dr. Strauss, which is dated May 15, 2019. The letter and Perkins Coie Report, which consists of approximately one hundred and eighty two (182) pages, articulate and delineate the various acts of misconduct and sexual abuse by Dr. Strauss, which were previously denied, concealed, and/or explained away by OSU. Also, the Report describes the knowledge of OSU as to the allegations against Dr. Strauss, the facts that establish OSU's deliberate indifference to Plaintiffs' legal rights, OSU's concealment of complaints as well as the fact that any abuse occurred prior to the date of the Report. According to the letter of May 17, 2019, OSU admitted that it did not know that the conduct of Dr. Strauss was improper or constituted sexual abuse or other misconduct. Admittedly, OSU stated they had unacceptable failures, offered their profound regret and sincere apologies, and stated that they failed to prevent the abuse. Further, in the letter OSU apologizes to the OSU community which includes Plaintiffs herein, and indicates a willingness to take curative action for its mistakes.

Approximately one (1) month after Plaintiffs learned of the misconduct disclosed and affirmed by OSU through the letter and the Perkins Coie Report, Plaintiffs filed the instant

8

action.

While admitting and conceding that the misconduct and sexual abuse toward Plaintiffs did occur as well as admitting and conceding that OSU fundamentally failed to prevent Plaintiffs' abuse, Defendant OSU moves to dismiss the instant action on the grounds that the statute of limitations on each of Plaintiffs' claims have expired. Defendant also asserts that Plaintiffs' fraudulent concealment and unlawful retaliation claims fail to state viable claims and that Eleventh Amendment immunity bars Plaintiffs' Section 1983 claims.

However, Defendant's motion is based upon faulty premises, is not well taken and should be denied. In sum, the Plaintiffs simply did not know or have reason to believe that they had been wronged until May, 2019. Not before the release of the Report did Plaintiffs know or have reason to believe that the medical exams to which they were subjected at OSU were actually in fact sexual assault and abuse. Not before the release of the Report did Plaintiffs know or have reason to believe that OSU knew of the misconduct of Dr. Strauss but did nothing to stop it and rather, took actions to conceal it. Not before release of the Report did Plaintiffs know or have reason to believe that OSU had a role in causing the abuse Plaintiffs suffered. Plaintiffs are clearly entitled to relief. Dismissal of this action on statute of limitations grounds would in effect, be rewarding OSU for its fraudulent concealment of the complaints against Dr. Strauss and the illegal acts of Dr. Strauss, rewarding OSU for its deliberate indifference to the rights of Plaintiffs and other OSU's students and athletes, as well as rewarding OSU for its illegal failure to report crimes, sexual abuse and sexual harassment pursuant to Title IX and the mandatory reporting requirements of The Clery Act. Simply put, this Court cannot allow such miscarriages of justice to occur.

9

## II. FACTS

Although moving Defendant has submitted a summary of some of the allegations against OSU in this case, said Defendant ignores most of the relevant factual allegations that support Plaintiffs' claims and in turn, support a finding that Plaintiffs' Amended Complaint was timely filed. Reviewing Plaintiffs' Amended Complaint as a whole establishes that sufficient allegations of fact against Defendant preclude dismissal of any of Plaintiffs' claims. The facts alleged by Plaintiffs are undisputed by OSU and/or must be deemed to be undisputed for the purpose of the instant motion.

Plaintiffs respectfully submit that they need not repeat the allegations of abuse herein. However, Plaintiffs incorporates by this reference their allegations of abuse set forth in detail in their Amended Complaint at Paragraphs 5-7, 8-14, 16, 44-50, 53-60, 63-70, 73-81, 84-86, 89-96, 99-106, 109-114, 117-130, 133-134, 137-142, 145-154, 157-159, 162-164, 168-174, 177-180, 183-184, 187-191, 194-203, 206-208, 212-218, 221-229, 232-237, 240-246, 249-252, 255-260, 263-266, 269-280, 283-287, 290-296, 299-301, 305-317, 320-326, 329-342, 345-349, 352-360, 363-366, 369-373, 376-384, 387-393, 396-400, 403-408, 411-415, 418-422, 425-426, and 429-432 [Doc. 33, Amended Complaint] and their allegations concerning sexual harassment at Larkins Hall. [*Id*. at ¶471-478, 503-504] In addition to the foregoing, the allegations of fact set forth in additional paragraphs of Plaintiffs' Amended Complaint are relevant to the issues raised by Defendant in its instant motion, as follows.

When Plaintiffs or other wrestlers questioned the prolonged medical exams by Dr. Strauss, Dr. Strauss would tell them that he was just being thorough, needed to check their lymph nodes, needed to check for STDs and/or that he was testing for testicular cancer. [*Id*. at ¶15] OSU made the same false representations. [*Id*. at ¶444, 454, 457-458, 462-463] OSU turned a

10

"blind eye" to Dr. Strauss' sexual abuse, facilitated and concealed the abuse [*Id*. at ¶33-34], and even legitimized the abuse by asserting that no complaints had been made against Dr. Strauss and that the examinations were medically appropriate. [*Id*. at ¶34] Defendant OSU further concealed, failed to disclose, showed deliberate indifference to, and/or knowingly aided, betted or concealed the abuse and failed to take corrective action, all to legitimize the abuse and fraudulently lead Plaintiffs to believe that the actions of Dr. Strauss were appropriate and above-board. [*Id*. at ¶35-37, 458, 463-470, 487-489, 515-520] To legitimize its position that no abuse occurred OSU even promoted Dr. Strauss throughout his tenure at OSU. [*Id*. at ¶434-442, 491, 521]

Plaintiffs allege that, in addition to the sexual allegations aforesaid, OSU permitted Dr. Strauss to give Plaintiffs and other OSU athletes illegal steroids and/or performance enhancing drugs under the guise that the use of same was acceptable treatment for athletes, all despite OSU's actual knowledge to the contrary. [*Id*. at ¶522-526]

Defendant OSU continued to deny that any of the actions of Dr. Strauss were irregular or even suspect until OSU finally conceded to allow an investigation in April of 2018, which year-long investigation was concluded in May of 2019. [*Id*. at ¶17] Moreover, since 1991, The Clery Act requires that OSU not only annually report allegations of sexual abuse, sex discrimination and sexual harassment, but also, The Clery Act requires that OSU make its students aware of the same. [*Id*. at ¶19] Despite the foregoing, mandatory reporting of sexual abuse requirements of The Clery Act, OSU only first acknowledged that sexual abuse occurred by Dr. Strauss at OSU in 2019 when it filed its annual report pursuant to The Clery Act and first notified members of the Ohio State Community of same in its letter and Perkins Coie Report dated May 17, 2019. [*Id*. at ¶18] Consequently, in 2019 for the purposes of mandatory reporting for The Clery Act,

11

OSU reported that in 2018, there were thirty (30) incidents of rape on campus by Dr. Strauss and nine hundred ninety two (992) incidents of fondling on the OSU campus by Dr. Strauss. [*Id.* at ¶18] Thus, both the Perkins Coie Report and the The Clery Act reporting of sexual abuse by OSU in 2019 concerning Dr. Strauss confirmed the various allegations of abuse set forth in Plaintiffs' Amended Complaint. [*Id.* at ¶20-21]

The Perkins Coie Report also confirmed that various OSU individuals, including but not limited to: Athletic Directors, lawyers, trustees, Medical Director, Vice President and other agents of OSU knew of the abuse by Dr. Strauss and concealed it. [*Id.* at ¶22-24] Although the approximate 182 page Perkins Coie Report is available for the Court to review to confirm these facts if necessary and Plaintiffs reserve the right to submit this Report should the Court so desire, Plaintiffs submit that at this stage of the litigation, this Court must accept the facts of the Report as true.

As previously stated, along with the Perkins Coie Report, on May 17, 2019 OSU, through its President and Chairman of the Board of Trustees, issued a letter to the Members of the Ohio State Community, which undisputedly included Plaintiffs, claiming that the allegations/findings of abuse are "shocking," that the extent of Strauss's sexual abuse was revealed in the Perkins Coie Report and that the Report revealed the "unacceptable failures of this institution [OSU]" as to such abuse, the failure of OSU to prevent it, as well as the failure of OSU to investigate or act meaningfully. In said letter, OSU further repeated that it only learned of the abuse allegations in the Spring of 2018. [*Id.* at ¶24] A copy of said letter is also attached hereto and incorporated herein as Exhibit A. [While a court typically cannot consider matters outside of the pleadings when deciding a motion to dismiss it may consider along with the Complaint (1) documents attached to, incorporated by, or referred to in the pleadings, (2) documents referred to in the

complaint and central to the plaintiffs' allegations, (3) public records, and (4) matters for which the Court may take judicial notice. *Whittaker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009). Here, Plaintiffs' Amended Complaint contains various references to said letter and its contents, thus this letter may be considered at this point.]

Only after receipt of the letter and Perkins Coie Report did Plaintiffs become aware that he had been sexually assaulted and abused by Dr. Strauss and that OSU had concealed the same from them and the other victims. [*Id.* at ¶25, 30-37] Until 2019, Plaintiffs had no reasonable basis to believe they had been sexually abused or that OSU had concealed or remained deliberately indifferent to the abuse. [*Id.* at ¶461-463] Indeed, Plaintiffs specifically allege that they expected OSU to provide a safe and supportive environment for them academically and athletically [*Id.* at ¶29], that they had a special relationship of trust with OSU and Dr. Strauss [*Id.* at ¶30], and that they trusted OSU with regard to quality of care and integrity of medical services provided by Dr. Strauss [*Id.* at ¶31]. Plaintiffs also specifically allege that they trusted OSU to not conceal or disregard circumstances that raised a substantial likelihood that Plaintiffs would be subject to abuse, sexual assault or sexual harassment [*Id.* at ¶32, 453-454]. Plaintiffs also specifically allege that they were not able to identify Strauss' conduct as sexual abuse when it occurred [*Id.* at ¶446] and didn't even know that male sexual abuse could exist. [Id. at ¶452] They had no experience with medical doctors or examinations and believed that Strauss was acting in their best health interest. [*Id.* at ¶448] Plaintiffs allege that they believed that Dr. Strauss was just being thorough as Dr. Strauss claimed and that all abuse Plaintiffs suffered was under the guise of legitimate medical examinations. [*Id.* at ¶449-450] In turn, all other OSU Medical Staff, Training Staff, Student Training Staff, Coaching Staff and Employees confirmed the legitimacy of Dr. Strauss as just being thorough during examinations.

13

It is undisputed that Title IX prohibits sex discrimination, sexual harassment and sexual abuse in any education program or activity which receives Federal financial assistance, that OSU does indeed receive Federal financial assistance, and that OSU had/has a duty to Plaintiffs to act promptly, prudently and with reasonable care to investigate the allegations against Dr. Strauss [*Id.* at ¶¶480-485, 490, 492-496, 500-502] Also, Plaintiffs allege that OSU was deliberately indifferent to the sexual harassment, discrimination and abuse in violation of Title IX and the Clery Act. [*Id.* at ¶¶18, 19, 506-512] Moreover, Plaintiffs allege that they suffered and continue to suffer injury and damage as a result of OSU's failures to act and/or concealment of sexual abuse and its recent acknowledgement that such abuse did indeed occur. [*Id.* at ¶¶497, 511-513]

In their Fourth Cause of Action Plaintiffs assert that in 2018 they engaged in the protected activity of reporting the illegal activity set forth above. They allege that they suffered retaliation from various employees and/or agents of OSU in the form of degradation, slander and other menacing/threatening activity in violation of Title IX. [*Id.* at ¶¶529-541]

Finally, Plaintiffs allege that the acts and conduct of Defendant violate 42 U.S.C. §1983. [*Id.* at ¶¶543-551]

Plaintiffs seeks declaratory relief and damages, including but not limited to compensatory damages, pre and post judgment interest, attorney fees, costs and other relief as this Court determines is appropriate. [*Id.* at Prayer for Relief]

## III. LAW AND ARGUMENT

### A. Applicable Legal Standards on Civ.R.12 Motions

It is well settled that in determining a motion to dismiss, the facts set forth in the complaint are assumed to be true and all reasonable inferences are to be drawn therefrom. As such, the evidence of the nonmovant is to be believed and all justifiable inferences are to be

drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Peterson v. Teodosio*, 34 Ohio St. 2d 161 (1973). More recently, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) the U.S. Supreme Court has stated that a complaint need only state enough facts to make it plausible that the plaintiff is entitled to relief. In the case at bar, the Plaintiffs have set forth those facts, including but not limited to the Plaintiffs' allegations set forth foregoing and those enumerated by OSU in its instant motion.

In *Fletcher v. University Hospitals of Cleveland*, 120 Ohio St. 3d 167 (2008), the Ohio Supreme Court has reiterated that the purpose of the Civil Rules is to obtain a just result. Defendant's analysis of the case and applicable law clearly do not reach a just result. Defendant first appears to be acknowledging that the Plaintiffs have set forth sufficient allegations to put OSU on notice of their claims, including but not limited to their claims under 42 U.S.C. Section 1983, but submits that OSU is not liable because the illegal acts alleged by Plaintiffs occurred beyond the two year statute of limitations period.

Not only are sufficient facts alleged by the Plaintiffs in their Amended Complaint, but contrary to Defendant's position, the Federal Rules of Civil Procedure provide for a liberal system of notice pleading. [Fed. R. Civ. P. 8(a).] A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." [Fed. R. Civ. P. 8(a)(2)] Such a statement must simply give the Defendant fair notice of what the Plaintiff's claims are and the grounds upon which those claims rest. *Swierkiewicz v. Soremna N.A.,* 534 U.S. 506, 512 (2002); *Conley v. Gibson*, 355 U.S. 41 (1957)).

Indeed, the Defendant does not claim that the facts alleged fail to state a claim, but rather asserts that this Court lacks subject matter jurisdiction on all claims. Plaintiffs respectfully submit that Defendant's arguments misconstrue applicable law and do not support Defendant's

15

position.  In considering a motion to dismiss pursuant to Rule 12(b)(1), a court should  grant the

motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled

to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

(internal quotation marks omitted)

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed in one of the

following two ways: either a facial challenge, asserting that the allegations pleaded in the

complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting

that the jurisdictional allegations of the complaint are not true or that other facts, outside the four

corners of the complaint, preclude the exercise of subject matter jurisdiction. *Kerns v. United*

*States,* 585 F.3d 187, 192 (4th Cir. 2009); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir.

2013).  Defendant has not met its burden on either of these prongs.

Claims made pursuant to 42 U.S.C. §1983 are not subject to heightened pleading

standards.  See *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,

507 U.S. 163 (1993) (rejecting heightened pleading standard for §1983 claims); and *Jones v.*

*Duncan*, 840 F.2d 359 (6th Cir. 1988) (holding that §1983 claims need not set forth in detail all

the particularities of a plaintiff's claim against a defendant).  The specific facts that will prove

Plaintiffs' allegations are properly obtained through discovery and need not be set forth in detail

in their Amended Complaint.  However, Plaintiffs have submitted sufficient detail to preclude

dismissal of their claims at this stage of the proceedings.

The law is clear that in considering motions pursuant to Civ. R. 12(b)(6), the Court must

accept all of the Plaintiffs' factual allegations as true. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir.

2018)  Also, the Court must draw all reasonable inferences in the Plaintiffs' favor. *Id*.  Then, the

Court must take all of those facts and inferences and determine whether they plausibly give rise

16

to an entitlement to relief. *Id.* referencing *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Id.*

Moreover, in considering motions pursuant to Federal Civil Rule 12, the only consideration is whether relief is possible under any set of facts that could be established consistent with the allegation(s). Clearly, the Defendant herein has fair notice of Plaintiffs' constitutional claims, and claims of discrimination, retaliation, fraudulent concealment, and related claims as well as the grounds upon which those claims rest.

Defendant OSU's use of the statute of limitations as a defense to the Plaintiffs' claims in their Complaint, is an affirmative defense and the burden is on Defendant OSU to show that the statute of limitations has run. *Lutz v. Chesapeake Appalachia L.L.C*, 717 F.3d 459, 464 (6th Cir. 2013) Furthermore, to prove the statute of limitations has run, the Defendant must establish when the Plaintiffs' claims accrued. See *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 625 (6th Cir. 2017)

Also, dismissal of an action on the pleadings on statute of limitations grounds is appropriate only if the complaint shows conclusively on its face that the action is time-barred. *Allen v. Andersen Windows, Inc.,* 913 F. Supp 2d 490 (S.D. Ohio 2012) It has long been held that it is inappropriate to dismiss an action on statute of limitations grounds on a Rule 12(b)(6) motion. *Cataldo v. U.S. Steel Corp.*, 676 F. 3d 542 (6th Cir. 2012) And such dismissal is disfavored because the Plaintiffs have no duty to plead facts *negating* a statute of limitations defense. *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 540 F. Supp 2d 925 (S.D. Ohio 2008). See, also, *Rauch v. Day & Night Manuf. Corp.*, 576 F. 2d 697 (6th Cir. 1978). In fact, "a Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."
*Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) Moreover, "[t]he determination of when a
cause of action accrues is to be decided by the trier of fact." *Kehoe Component Sales Inc. v. Best
Lighting Prod., Inc.*, 933 F. Supp. 2d 974, 1016 (S. D. Ohio 2013)

Plaintiffs have been very clear that the fact of the abuse was concealed by Defendant
OSU until May of 2019. Plaintiffs further have been very clear about the retaliation against them
for speaking out concerning their abuse and the acts of Dr. Strauss and OSU in connection
therewith. Their Complaint filed in October, 2019 and thereafter amended is clearly within the
two year statute of limitations which Defendant claims expired prior to the filing in this case.
Thus, the Plaintiffs have therefore satisfied the pleading requirements with respect to their
claims. See *Smith v. Salem, Ohio*, 2004 FED App. 0160P (6th Cir.)

In the case at bar, Plaintiffs submit that the Defendant has pointed out no valid
deficiencies and that the Plaintiffs have alleged sufficient facts to support their claims such that
dismissal is not proper. However, should this Court believe that the Plaintiffs have not set forth
sufficient facts to articulate their claims, Plaintiffs respectfully move this Court for leave to
amend their Complaint in order to do so.

No party would be prejudiced should leave to amend be granted. And Federal Rule of
Civil Procedure 15(a)(2) provides:

> . . .a party may amend its pleading only with the opposing party's written
> consent or the court's leave. The court should freely give leave when justice
> so requires.

As stated by the United States Supreme Court in Foman v. Davis, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a
> proper subject of relief he ought to be afforded an opportunity to test his
> claim on the merits. In the absence of any apparent or declared reason --
> such as undue delay, bad faith, or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously allowed,

18

> undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of the amendment, etc. -- the leave sought should, as the
> rules require, be freely given.

Accordingly, in the interest of justice, should this Court deem any of Plaintiffs' claims to

be insufficiently plead, this Court should grant Plaintiffs leave to file a Second Amended

Complaint within a reasonable time thereafter.

Based upon the foregoing and as set forth following, it is clear that Defendant's motion to

dismiss is not well taken and must be denied.

## B. Plaintiffs' Title IX Claims are not barred by the Statute of Limitations

Title IX does not spell out any statute of limitations period, so Federal Courts have

borrowed state personal injury limitation periods. (Doc. 36 at ECF 5-6) *Lillard v. Shelby Cty.

Bd. of Ed.*, 76 F.3d 716 (6th Cir. 1996) In Ohio, the statute of limitations period is two (2) years

pursuant to Ohio Revised Code § 2305.10(A).

OSU agrees that federal law determines when a Title IX claim accrues and whether

equity justifies tolling the limitation period. (Doc. 36 at ECF 6) The federal discovery rule

governs when a claim accrues and the standard rule is that the limitations period commences

when the Plaintiff has a complete and present cause of action. *Bay Area Laundry and Dry

Cleaning Pens. Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997)

The Sixth Circuit states that "a cause of action accrue(s) under the discovery rule when [a

plaintiff] knew, or in the exercise of reasonable diligence should have known, of both the injury

and its cause." *Fonseca v. Consolidated Rail Corp.*, 246 F.3d 585, 590 (6th Cir. 2001) In

addition, the federal discovery rule provides that a cause of action does not arise until the

Plaintiff knows, or by the exercise of reasonable diligence should know, of both the injury and its

19

cause that he has been injured by the conduct of the Defendant. *Lutz v. Chesapeake Applachia,*
L.L.C,* 717 F. 3d 459, 470 (6th Cir. 2013)

Defendant OSU does not deny that any of the heinous allegations of sexual abuse
occurred. Likewise, Defendant OSU does not deny that it is subject to Title IX and the Clery Act
which prohibit sex discrimination, sexual abuse and sexual harassment and that require
mandatory annual reporting and disclosure of such abuse and allegations of such abuse.
Similarly, Defendant OSU does not deny that it fraudulently concealed information from the
Plaintiffs or that it determined that no abuse occurred until it received the Perkins Coie Report in
May, 2019.

Rather, OSU argues that Plaintiffs' claims are barred by the applicable statute of
limitations. Defendant's argument as to the statute of limitations on Plaintiffs' Title IX claims as
set forth in their First and Second Cause of Action of their Amended Complaint is misplaced.
Plaintiffs are not suing the perpetrator of the abuse, Dr. Strauss but rather the Plaintiffs are suing
OSU for its role in deliberately concealing the fact that the "thorough exams" to which Dr.
Strauss was subjecting athletes and students such as the Plaintiffs, were not in fact normal
medical treatment, but were instances of sexual abuse and/or sexual harassment, sex
discrimination and/or sexual misconduct and that, had OSU not been deliberately indifferent to
Plaintiffs' rights, it would have terminated Dr. Strauss prior to his abuse of Plaintiffs.

The Ohio Supreme Court has long held that the "statutes of limitations are remedial in
nature and are to be given a liberal construction to permit cases to be decided upon their merits,
after a court indulges every reasonable presumption and resolves all doubts in favor of giving,
rather than denying, the plaintiff an opportunity to litigate." *Flagstar Bank, F.S.B. v. Airline
Union's Mtge. Co.,* 128 Ohio St. 3d 529 (2011, at ¶7) OSU should not be permitted to hide

20

behind a statute of limitations defense especially where, as here, its own actions concealed and/or covered up the facts which would have established Plaintiffs' cause of action during their tenure at OSU and would have allowed them to pursue their claims at the time that the abuse occurred.

It is undisputed that the acts of Dr. Strauss occurred years ago. However, based upon the actions of *OSU*, Plaintiffs did not and could not reasonably have known that the medical treatment they were receiving from Dr. Strauss was sexual misconduct until the Report delineating the same was published in May 2019. It is undisputed that said Report specified that the "medical treatment" to which Plaintiffs were subjected was in fact sexual abuse, that OSU had knowledge of the sexual abuse, that OSU took no action against Dr. Strauss despite OSU's said knowledge, and that OSU concealed the abuse from its students, including Plaintiffs. [Doc. 33 at ¶25]

As set forth foregoing, currently it must be determined to be undisputed at this stage of the proceedings that Plaintiffs did not know they had been subjected to sexual misconduct and abuse until May 2019. Further, according to the Perkins Coie Report aforesaid, OSU also did not know that the acts of Dr. Strauss constituted sexual abuse or, if OSU did know, it effectively concealed the allegations of abuse and the fact that the actions taken by Dr. Strauss did constitute abuse and OSU continued to assure students, including Plaintiffs, that no abuse had occurred. If OSU was unaware prior to the Report in 2019 that the conduct suffered by Plaintiffs as alleged in their Amended Complaint was sexual abuse/misconduct, it is inconceivable and unreasonable to impute that knowledge to Plaintiffs. Further, Plaintiffs could not have known that OSU was concealing illegal activity until the Report and letter acknowledging same were published in May 2019. Indeed, the letter itself acknowledged that OSU was continuing to conceal and deny any abuse even as late as 2018 when the investigation began. Finally in this regard, prior to the

21

Report and letter in May 2019, it was impossible for Plaintiffs to know that OSU could have prevented the abuse against them had OSU acted on the complaints of other students and taken appropriate action against Dr. Strauss. Accordingly, Plaintiffs' Complaint filed on June 12, 2019, as amended, was filed well within any limitations period applicable under state or federal law.

Moreover, Defendant admits, and it is undisputed that Title IX does not include a specific statute of limitations. Defendant, however, incorrectly relies on *Rotkiske v. Klemm* for the proposition that the discovery rule should not be applied to federal statutes and thus should not be applied in this case. *Rotkiske v. Klemm* is distinguished from this action, in any event, because the plain text of the statute in that case involved a statute which unambiguously set the date of the violation that started the statute of limitations to run. Undisputedly, this is not the case with Title IX. Further, the Supreme Court in said case also explained that Rotkiske could not rely on the equitable fraud-specific discovery rule to excuse his otherwise untimely filing because that issue was not preserved in the lower court nor raised in his petition for certiorari. *Rotkiske v. Klemm*, No. 18-328, (U.S. Dec. 10, 2019) 589 U.S. ___ (2019), Pp. 6-7

Significantly, the Supreme Court also noted in *Rotkiske* the existence and viability of applying a discovery rule in fraud cases. See *Merck & Co. v. Reynolds*, 559 U.S. 633, 644 and *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. ___, ___ [The discovery rule is an equity-based doctrine applicable in fraud cases.] Clearly Plaintiffs' claims in this case are the precise type of situation in which the discovery rule should be applied.

Likewise, the other cases cited by Defendant OSU do not apply to the facts and allegations in this case and are easily distinguishable. For example, although the Sixth Circuit in *Gilley v. Dunaway*, 572 F. App'x 303 (6th Cir. 2014) found that the plaintiff's Title IX claim

accrued at the time that the student was sexually abused by her high school coach, contrary to the facts in *Gilley*, in the case at bar the Plaintiffs had no reason to investigate earlier because they knew that OSU had received prior complaints and that OSU had determined that the acts of Dr. Strauss were legitimate and medically sound. This is a reasonable conclusion inasmuch as it is common knowledge that physicians are expected to and regularly touch their patient athletes in areas, especially during physicals or examinations for injuries and/or illness that may make the patient uncomfortable in order to complete the physical or determine illness and/or diagnosis of the injury.

Contrary to the implication of OSU, in *Griffin v. Case W. Reserve Univ.*, 199 WL 238669 (6th Cir. April 13, 1999) cited by Defendant, the case was dismissed because the plaintiffs failed to state a claim under Title IX, not because the claims were time-barred. In *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983 (S.D. Ohio 2018) the case was dismissed because of sufficiency of notice, not because of a statute of limitations challenge. Also, in *Anderson v. Bd. Of Educ. Of Fayette Cty.*, 616 F. Supp 2d 662 (E.D Ky. 2009) the dismissal was based upon deficient pleadings. To the contrary, Plaintiffs herein clearly plead the discovery rule and accrual of their claims in May 2019 and has sufficiently set forth each of their claims.

Further, contrary to the analysis by Defendant OSU of *Bowling v. Holt Pub. Sch.*, 2017 WL 4512587 (W.D. Mich. May 26, 2017), the *Bowling* decision supports a conclusion that the continuing violation theory is applicable to the case at bar and precludes dismissal. The term "continuing violation" has been defined by various courts, including the Sixth Circuit which defined the same as an "ongoing discriminatory policy". *Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 827 (6th Cir. 1981); *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) [defining a continuing violation as "a series of related acts, one or more of which

23

falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period"]

The continuing violation doctrine has often been divided into two categories. Under the first category, a continuing violation "arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation[.]" Under the second category, a continuing violation "arises where there has occurred a 'longstanding and demonstrable policy of discrimination' ... [and] a specific allegedly discriminatory act against the plaintiff [has occurred] within the relevant limitations period[.]" *E.E.O.C. v. Penton Industrial,* 851 F.2d 835, 838 (6th Cir.1988).

The continuing violation theory is available to remedy practices and policies that operate to deny parties their protected rights if the offending practice continued to be enforced during the limitations period. *Perez v. Laredo Junior College,* 706 F. 2d 731 (5th Cir. 1983) cert. denied, 464 U.S. 1042, 104 S.Ct. 708 (1984). See also, *Pike v. City of Mission, Kan.,* 731 F.2d 655 (10th Cir.1984) [Suit challenging a systematic policy is not barred even though the policy began before the limitations period, because the policy itself continues to violate employees' rights]; cf. *Brewster v. Barnes,* 788 F.2d 985 (4th Cir.1986) [continuing violation such that statute began to run on last day of plaintiff's employment]; *Hall v. Ledex, Inc.,* 669 F.2d 397 (6th Cir. 1982) [violation continuing in nature on each denial of equal pay with each check received]

A continuing violation occurs where, as here, the Plaintiffs allege that they have been harmed by an actual policy of discrimination held by the Defendant, or by a series of acts performed by the Defendant, to wit, continued concealment of and/or cover up of and denial and refusal to report sexual abuse and other unlawful conduct. In this case, each day that such a policy is in force is a new violation. *See Chung v. Pamona Valley Community Hospital,* 667

F.2d 788 (9th Cir. 1982) [applying continuing violation theory to §1981 suit] Additionally, each day that the policy continues is considered to be a separate discriminatory act. Therefore, the statute of limitations period begins anew each day that the discriminatory policy remains in existence. *Roberts*, supra. In fact, the Sixth Circuit stated in *Roberts* that, "[w]e do not think that Title VII requires that suit be filed when the applicant is initially discriminated against. If an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well." *Roberts*, supra at 827.

In turn, the same analysis should be applied to Plaintiffs' claims as to violation of Title IX. In fact, in interpreting Title IX courts apply the legal principles elaborated under Title VII. See *North Haven Bd. Of Educ. v. Bell*, 456 U.S. 512 (1982) In the case at bar, OSU's continuing assertion of no wrongdoing by Dr. Strauss, coupled with OSU's continued failure, until May 2019 to report wrongdoing as required by Title IX and the Clery Act, and its admission in its letter that it did not take action necessary to protect its students over the years, clearly supports Plaintiffs' position that the statute of limitations began to run on May 17, 2019 as set forth foregoing. Obviously if OSU did not know abuse had occurred, or that OSU could have prevented it, or that OSU failed in its legal duty to report it, one can reasonably assume that the Plaintiffs did not know either. Rather, the truth, and OSU's part in it, was concealed and/or covered up from the Plaintiffs, the OSU student body, the public, and OSU itself. The simple fact that OSU would request an investigation in 2018 of allegations made years before supports a finding that even OSU could not have known of the abuse and misconduct, much less an ordinary people like the Plaintiffs.

## C. Defendant OSU's Fraudulent Concealment of the Sexual Abuse of Dr. Strauss Tolls the Statute of Limitations

Fraudulent concealment "toll[s] the running of the statute of limitations period when the defendant takes steps beyond the challenged conduct itself to conceal that conduct from the Plaintiff." *Brown v. United States*, No. 2:16-cv-0358, 2017 WL 2378375 at 5 (S.D. Ohio June 1, 2017)

In addition, equitable tolling applies where there is some conduct of the adverse party that excludes suspicion and prevents injury. *Lutz v. Chesapeake Appalachia L.L.C*, 717 F.3d 459, 474 (6th Cir. 2013). A plaintiff must show the defendant engaged in a course of conduct to conceal evidence of the alleged wrong doing and that plaintiff despite the exercise of due diligence failed to discover the facts supporting the claim. *Id.*

In order to plead a claim of fraudulent concealment the Plaintiffs must plead the time, place and content of the misrepresentation on which they relied, the fraudulent scheme, the fraudulent intent of the Defendant and the injury resulting from the fraud. *Allen v. Anderson Windows, Inc.*, 913 F. Supp 2d 490, 515 (S.D. Ohio 2012) (quoting *Bird v. Delacruz*, 411 F. Supp. 2d 891, 895 (S. D. Ohio). Plaintiffs have clearly met this pleading requirement. [Doc. 33 at ¶ 514-526] Plaintiffs claim that OSU fraudulently concealed the fact of sexual abuse by Dr. Strauss and as a result of the concealment and resulting failure to act of OSU, Plaintiffs suffered injury and damage. Defendant does not, indeed cannot, dispute the fact of its concealment nor its failure to act. Rather, its letter of May 17, 2019 and the Perkins Coie Report constitutes indisputable admissions by OSU of its wrongdoings as alleged by Plaintiffs herein.

In a group of cases filed against Baylor University, the Western District of Texas refused to dismiss injury claims on the basis of the discovery rule and fraudulent concealment doctrine to the Title IX claims, in these cases, as the Court found that the claims did not accrue at the time

each plaintiff was assaulted by a Baylor football player, but on the date that an independent external report regarding the University's response to Title IX was released. The Court in the Baylor cases found that although obviously the plaintiffs knew they were injured, the university's active concealment and failings, as in the instant case, caused the plaintiffs' injury and were thus undiscoverable until the release of the report. See *Lonzano v. Baylor Univ.,* 408 F. Supp. 3d 861 (W.D. Tex. 2019), *Doe 12 v. Baylor Univ.,* 336 F. Supp. 2d 763 (W.D. Tex. 2018), *Hernandez v. Baylor Univ.,* 274 F. Supp. 3d 602 (W.D. Tex. 2017) *Doe 1 v. Baylor Univ.,* 240 F. Supp 3d 646 (W.D. Tex. 2017) Plaintiffs' allegations herein constitute a substantially similar fact pattern to the *Baylor* cases and a similar Idaho case, *James v. Univ. of Idaho,* 2019 WL 5606828 (D. Idaho Oct. 30, 2019) [Title IX claim did not accrue until an independent report of the university's handling of Title IX cases established that it had failed to investigate two prior complaints against the plaintiff's abuser.]

In fact, even if Plaintiffs had investigated OSU's conduct prior to the release of the Report in 2019, their efforts would have been futile, as OSU controlled and withheld all information about prior complaints and claims of abuse and simply told untruths when questioned by its students and athletes. See *U.S. v. Kubrick,* 444 U.S. 111 (1979)[claim does not accrue because the facts about causation may be in the control of the defendant and difficult or unavailable for the plaintiff to obtain.] Also, it has been held that when a defendant controls the facts surrounding causation that a reasonable person could not obtain even with a diligent investigation the statute of limitations is tolled. See *Piotrowski v. City of Houston*, 51 F. 3d 512 (5th Cir. 1995).

Based upon the facts alleged by Plaintiffs in their Amended Complaint as summarized in the fact portion of this memorandum, there is no question that Plaintiffs believed that they had

not suffered anything other than ordinary medical treatment. The fact that OSU hid the truth, even from itself, supports application of the accrual/discovery rule in this case. The fact that OSU had to hire an independent investigative team and obtain a voluminous report documenting abuse by Dr. Strauss involving over 177 students over the course of 20 plus years and concealment by numerous OSU officials before OSU would acknowledge that Strauss' actions were in fact abuse, requires a conclusion that the Plaintiffs could not possibly have known that they suffered actionable injury prior to release of said report. Simply put, OSU must be held accountable for its egregious misconduct.

Furthermore, there is a well established doctrine known as the "clean hands doctrine," which is a rule of law that a party bringing a motion and asking for equitable relief must be innocent of wrongdoing or unfair conduct. Thus, a Court may deny relief to a party where the party applying for relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue and to the other party's detriment. See *Precision Instrument Mfg. Co. V. Auto Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) Inasmuch as OSU failed Plaintiffs and its student body for decades in violation of Title IX, The Clery Act and applicable law through its own concealment, cover up, and deliberate indifference, OSU cannot now be released from liability on the basis that its own egregious misconduct created a statute of limitations defense to Plaintiffs' claims. Clearly, Defendant OSU violated the "clean hands doctrine" and on that basis alone this Court should deny the Defendant's request for relief as "those seeking equity must do equity" and by their own admissions OSU has dirty hands.

In summary, the accrual of Plaintiffs' causes of action should be based not on discovery of medical problems or abuse instances, but rather on discovery of OSU's indifference to Plaintiffs' situation and dealings with Dr. Strauss. See *Scott v. Ambani*, 577 F. 3d 642 (6th Cir.

2009) Obviously prior to the May 17, 2019 report Plaintiffs had no reason to believe that OSU knew that Dr. Strauss was an abuser and that OSU could have stopped the abuse before it was perpetrated upon Plaintiffs. At minimum, the accrual issue is an issue for determination by the trier of fact and must be resolved in Plaintiffs' favor at this stage of the proceedings. See *In re Arctic Exp. Inc.,* 636 F. 3d 781 (6th Cir. 2011).

### D. Plaintiffs have sufficiently stated a claim for unlawful retaliation under Title IX.

Contrary to the argument of Defendant, Plaintiffs have sufficiently stated a claim for retaliation as a result of their protected activity in participating in the investigation by Perkins Coie beginning in summer, 2018. Those allegations are set forth in Plaintiffs' Amended Complaint at paragraphs 528-541.

In fact, Defendant OSU sets forth allegations of Plaintiffs' Complaint which establish that they did engage in such activity and that OSU undisputedly has notice of the retaliation claim asserted by Plaintiffs. [Doc. 36, Motion to Dismiss, at p. 17] As set forth foregoing in the Applicable Legal Standards portion of this Memorandum, Plaintiffs need not submit their proof at this stage of the proceedings, but merely must set forth sufficient allegations upon which relief could plausibly be granted. The Plaintiffs have done just that. They allege that they engaged in protected activity and also exposed the sexually hostile environment that existed at Larkins Hall. [Doc. 33 at ¶533-541]. Plaintiffs allege that after the Perkins Coie Report was issued, OSU through its employees, faculty, staff or former employees were aware of Plaintiffs' activity [Id. at ¶533-541], that as a result of their activity OSU, through those employees, faculty, staff, former employees, friends and/or benefactors, took action to disparage them and/or silence them [*Id*. at ¶533-541] and that OSU ratified those actions. [*Id*. at 538]

In *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), the Supreme Court

held that "[r]etaliation against individuals because they complain of sex discriminate is 'intentional conduct that violates the clear terms of [Title IX],'" *Id.* at 183. (quoting *Davis ex rel. Lashonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). Applying *Jackson*, courts have recognized the following elements to support a claim for Title IX retaliation: (1) a person engaged in protected activity, (2) the school took a materially adverse action against that person, and (3) that there was a "but-for" causal connection between the protected actively and the materially adverse reaction.

Moreover, the *McDonnell Douglas* burden-shifting framework applies to Title IX and ELCRA retaliation claims that rely on indirect evidence of retaliation. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013), abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013); *Fuller v. Mich. Dep't of Transp.*, 580 Fed.Appx. 416, 423 (6th Cir. 2014)

Contrary to the argument of Defendant, Plaintiffs need not be a current student to assert a claim for retaliation under Title IX. In fact, in *Atkinson v. Lafayette College*, 460 F.3d 447, 451-52 (3d Cir. 2006) the plaintiff was a former Athletic Director who was terminated after she complained about sex discrimination. The Third Circuit found that she was entitled to pursue her claims in the lower court. Further, in *Gordon v. Traverse City Area Public Schools*, 686 F. App's 315 (6th Cir. 2017) the issue in the case was not the identity of the plaintiff(s) nor any admonition that the plaintiff must be a student.

**E. The Plaintiffs have set forth a sufficient factual basis for their claims under 42 U.S.C. Section 1983 and Defendant is not entitled to Eleventh Amendment Immunity.**

As Defendant acknowledges, OSU undisputedly has notice that Plaintiffs assert claims for violation of 42 U.S.C. Section 1983. The Supreme Court has held that a Title IX litigant is

not precluded from concurrently asserting a Section 1983 claim for violations of constitutional

rights. See *Fitzgerald v. Barnstable,* 129 S. Ct. 788 (2009)

With regard to Plaintiffs' Section 1983 claims, 42 U.S.C. Section 1983 provides, in relevant

part:

> Every person who, under color of any statute, ordinance, regulation, custom or
> usage, of any State. . .subjects or causes to be subjected any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress. . .

To succeed on a claim for a violation of §1983, the Plaintiffs must show that (1) a person

(2) acting under color of state law (3) deprived him of rights secured by the United States

Constitution or its laws. See *Waters v. City of Morristown*, 242 F. 3d 353, 358-59 (6th Cir.

2001). Such is the case in the action at bar. Further, it has been held that §1983 claims are

generally inappropriate for pretrial disposition, even on summary judgment, particularly where,

as here, there is room for a difference of opinion. *Llaguno v. Mingey*, 763 F. 2d 1560 (7th Cir.

1985).

Undisputedly the rights of student athletes to be free from sexual abuse and from denial

of equal protection and due process of laws are well and firmly established. As the Supreme

Court reconfirmed in *City of Canton v. Harris*, 489 U.S. 378 (1989), a municipality may be

liable under section 1983 where its policymakers made "a deliberate choice to follow a course of

action... from among various alternatives... and the policy chosen reflects deliberate

indifference to the constitutional rights of [the city's] inhabitants." Additionally, it is well settled

that even unwritten customs or policies will suffice to establish same. *Jett v. Dallas Indep. Sch.

Dist.,* 491 U.S. 701 (1989)

The Plaintiffs allege that OSU not only failed to train its employees, but that it

maintained customs and policies where sexual abuse, assault, molestation and harassment of

students was the norm and that OSU was deliberately indifferent to those rights. [Doc. 33 at

31

¶542-551]  A state may also be found liable when the State Defendant did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on. *Bass v. Robinson*, 167 F. 3d 1041 (6th Cir. 1999).  As set forth in Plaintiffs' Amended Complaint and the law and argument set forth foregoing, the Plaintiffs have made just such allegations.

In *Vance v. Spencer County Public School Dist.*, 231 F.3d 253 (6th Cir. 2000) the Sixth Circuit Court of Appeals examined that type of conduct that satisfies the deliberate indifference standard. The Sixth Circuit analyzed several cases in which the courts have permitted cases to go to a jury on the issue of deliberate indifference, including the lack of appropriate response by a school board and its officials. See *Murrell v. School District No. 1*, 186 F.3d 1238, 1243 (10th Cir. 1999) (upholding plaintiffs' claim when school did not inform law enforcement, investigate, nor discipline the offending student), and *Doe v. School Admin. District No. 19*, 66 F.Supp. 2d 57,60-64 (D.Me. 1999) (holding that a jury could find the school district's response was unreasonable in light of known circumstances.)  At minimum, the facts alleged by Plaintiffs in the case at bar demonstrate that Defendant OSU has been deliberately indifferent to Plaintiffs' constitutional rights.

Moving Defendant's circular discussion as to immunity and jurisdiction is misplaced and disregards the Amended Complaint itself and applicable law.  First, Congress has passed legislation that specifically removes the states' immunity from being sued under Title IX. The Sixth Circuit has long held that Congress validly abrogated the state's Eleventh Amendment immunity in Title IX actions. See *Franks v. Kentucky School for the Deaf*, 142 F. 3d 360 (6th Cir. 1998), *Horner v. Kentucky High Sch. Athletic Ass'n*, 206 F. 3d 685 (6th Cir, 2000), cert denied, 121 S. Ct 69 (2000) Also, courts have consistently held that federal courts have the authority to enforce damage remedies against state agencies under Title IX of the Education Amendments of 1972. See *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992) and *Cannon v. University of Chicago*, 441 U.S. 677 (1979)

Further, as is clear from the prayer for relief set forth in Plaintiffs' Amended Complaint, Plaintiffs seek judgment against Defendant OSU declaring that OSU's conduct is in violation of

32

Title IX of the Education Amendments of 1972 and in violation of 42 U.S.C. §1983. In addition, contrary to the assertions of Defendant, the Supreme Court has found that Eleventh Amendment immunity has been waived by the State in actions under Section 1983. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) Courts also have jurisdiction of Section 1983 claims for monetary damages against State employees. *Martin v. Roeder*, 83 Ohio App. 3d 64 (1992); *Foulkes v. Ohio Department of Rehabilitation and Correction*, 33 F. 2d 1229 (6th Cir. 1983).

Similarly, a State may voluntarily waive its immunity from suit by accepting federal funding for a particular program such as is the case at bar. See, *Nihiser v. Ohio Envtl. Prot. Agency*, 269 F. 3d 626 (6th Cir. 2001)

Finally in this regard, the Eleventh Amendment does not bar suits seeking prospective injunctive relief, as also is reflected in the facts in the case at bar. See *Ex Parte Young*, 209 U.S. 123 (1908), *Edelman v. Jordan*, 415 U.S. 651 (1974), *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) Accordingly, it is clear that moving Defendant enjoys no immunity in this case.

Likewise, Defendant's statute of limitations claim as to Plaintiffs' Section 1983 action is also misplaced. The date on which the statute of limitations begins to run in a §1983 action is a question of federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Ordinarily, the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273. "In determining when the cause of action accrues in Section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). There are the following two (2) exceptions to that rule: where the Plaintiff can show prior discriminatory activity that continues into the present, as opposed to prior discriminatory activity whose effects continue into the present, *Tolbert v. State of Ohio Dept. of Transp.*, 172 F.3d 934, 940 (6th Cir.1999), and where the Plaintiff can show "a longstanding and demonstrable policy of discrimination." *Dixon*, 928 F.2d at 217. As set forth foregoing and in particular in the prior discussion regarding the statute of limitation, Plaintiffs have set forth sufficient allegations to

require the application of both of these "continuing violation" exceptions.

**F. Defendant OSU's Reference to Mediation and Settlement is Totally Inappropriate and should be Stricken from its Motion**

Defendant OSU refers on page 1 in its Motion to Dismiss that "OSU has already settled 162 of the survivors' claims…consistent with that order, mediation remains ongoing with all remaining plaintiffs, including the plaintiff in this case…OSU hopes the remaining plaintiffs will agree to settle on the same basis as the 162 settled plaintiffs."

Defendant OSU's mention of mediation and settlement in its Motion is wholly self serving, misplaced, and totally improper. Local Rule 16.3(c) of the Rules of the United States District Court Southern District of Ohio states that mediation communications, including offers to compromise are confidential unless all parties to the mediation consent in writing. Further, 28 U.S. Code § 652 (d) states that Courts must prohibit disclosure of confidential dispute resolution communications. The reason for this unprofessional and despicable mention of settlement by OSU is a "veiled attempt" to curry favor with the Court and the general public. Defendant OSU wants to appear to be "doing the right thing." However, since OSU has chosen this "wholly inappropriate path" Plaintiffs feel compelled to mention that OSU's settlement of 40.9 million for 162 former OSU students, who were admittedly sexually abused by an OSU employee, Dr. Strauss, over the course of twenty (20) years, as to whose actions, OSU fraudulently concealed, covered up, and was completely indifferent toward is approximately 10 million dollars less than its contracted salary to just one man, its head football coach. Therefore, Plaintiffs doubt and disbelieve OSU is acting in good faith or sincere when it tells this Court OSU wants to "do the right thing." This clearly shows that the proper and just compensation to the OSU athletes and students sexually molested by Dr. Strauss is not a priority to OSU but football is.

34

## IV. CONCLUSION

Based upon the foregoing, it is clear that the Plaintiffs have alleged sufficient facts to support their claims and to establish tolling of the applicable statute(s) of limitations. The Defendant's motion to dismiss is therefore not well taken and must be denied.

Without waiving the foregoing, should this Court determine that Plaintiffs' Amended Complaint is defective in any manner in its statement of Plaintiffs' claims, in the interest of justice and judicial economy, this Court should permit Plaintiffs to file a Second Amended Complaint within a reasonable time to cure any such deficiency.

Respectfully submitted:

*/s/ J.C. Ratliff*                    ,
J.C. Ratliff (0027898)
*Attorney for Plaintiffs*
200 West Center Street
Marion, Ohio 43302
Telephone: 740/383-6023
Fax: 740/383-2066
Email:attorney.ratliff@gmail.com

*/s/ Rocky Ratliff*                    ,
Rocky Ratliff (0089781)
*Attorney for Plaintiffs*
200 West Center Street
Marion, Ohio 43302
Telephone: 740/383-6023
Fax: 740/383-2066
Email:attorney.ratliff@gmail.com

## CERTIFICATE OF SERVICE

This is to certify that on August 17, 2020 a copy of the foregoing, with exhibit attached, was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/J.C. Ratliff                ,
J.C. Ratliff (0027898)
*Attorney for Plaintiffs*
200 West Center Street
Marion, Ohio 43302
Telephone: 740/383-6023
Fax: 740/383-2066
Email:attorney.ratliff@gmail.com


/s/ Rocky Ratliff              ,
Rocky Ratliff (0089781)
*Attorney for Plaintiffs*
200 West Center Street
Marion, Ohio 43302
Telephone: 740/383-6023
Fax: 740/383-2066
Email:attorney.ratliff@gmail.com