# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Brian Garrett, *et al.*,

        Plaintiffs,

v.

The Ohio State University,

        Defendant.

Case No. 2:18-cv-692

Judge Michael H. Watson

Magistrate Judge Preston Deavers

---

Nicholas Nutter, *et al.*,

        Plaintiffs,

v.

The Ohio State University,

        Defendant.

Case No. 2:19-cv-2462

Judge Michael H. Watson

Magistrate Judge Preston Deavers

---

Rocky Ratliff,

        Plaintiff,

v.

The Ohio State University,

        Defendant.

Case No. 2:19-cv-4746

Judge Michael H. Watson

Magistrate Judge Preston Deavers

---

Michael Alf, *et al.*,

        Plaintiffs,

v.

The Ohio State University,

        Defendant.

Case No. 2:21-cv-2542

Judge Michael H. Watson

Magistrate Judge Preston Deavers

Michael Canales, *et al.*,

      Plaintiffs,

v.

The Ohio State University,

      Defendant.

Case No. 2:21-cv-2562

Judge Michael H. Watson

Magistrate Judge Preston Deavers

## OPINION AND ORDER

Some Plaintiffs move for the Undersigned's recusal from these cases.

ECF No. 193,[1] Case No. 2:18-cv-692; ECF No. 50, Case No. 2:19-cv-2462; ECF

No. 36, Case No. 2:19-cv-4746; ECF No. 16, Case No. 2:21-cv-2562. For the

following reasons, the motions are **DENIED**.

## I.    BACKGROUND

These cases, and many others, stem from the sexual abuse and

harassment Plaintiffs faced while they were students at The Ohio State

University ("Defendant").

The first such case was filed on July 16, 2018. Compl., ECF No. 1. After

Plaintiffs in that case amended their complaint, Am. Compl., ECF No. 33, and

Defendant moved both to stay all discovery in the case and to dismiss the

amended complaint, Mots., ECF Nos. 32, 38, the Court held its first status

conference in these cases on January 17, 2019. The first thing the Undersigned

---

[1] Unless otherwise specified, all future citations to the docket are from Case No. 2:18-cv-692.

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

did during that first hearing was disclose his status as an adjunct professor at The Ohio State University Moritz College of Law ("Moritz"), which is not a defendant in any of these cases. Tr. 3:22–4:3, ECF No. 52. At that initial hearing, the Court invited any party to raise recusal issues based on the Undersigned's affiliation with Moritz. *Id.* In the more than two years that have passed since that disclosure, no party objected or moved for recusal.

Although Plaintiffs in some of these cases complain about the pace with which litigation has proceeded, the Undersigned immediately referred these cases to mediation, Tr. 4:4–7, ECF No. 52, in the hopes that Plaintiffs would obtain some measure of monetary relief for their suffering. *See, e.g.*, Opinion and Order, ECF No. 197. Mediation proceeded and was successful for 185 Plaintiffs, but Plaintiffs' complaint about the delay in ruling on the dispositive motions shows that no good deed goes unpunished. The Court did not receive word that mediation was unsuccessful as to some Plaintiffs until April 2020. *See* Order, ECF No. 151 ("Until recently, however, the Court had not received word from the mediator that the situation warranted parallel mediation and litigation efforts. Having now been so informed by the mediator, the Court **PARTIALLY LIFTS** the mediation stay and **ORDERS** the following . . . ."). At that point, the Court lifted the mediation stay and ordered the parties to continue on a parallel litigation and mediation track. *Id.*

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

The non-settling Plaintiffs each filed Amended Complaints the following month, *e.g.*, Second Am. Compl., ECF No. 157, and Defendant moved to dismiss those Amended Complaints, *e.g.*, Mot. Dismiss, ECF No. 162. Those motions became ripe for ruling on August 18, 2020, Reply, ECF No. 170, in the height of a global health pandemic.

In May 2021, Defendant publicly announced that, wholly apart from the Court-ordered mediation, it was instituting a settlement program that would be open for 120 days after its initiation. Notice, ECF No. 176. The Court announced that it would issue its Opinion and Order on Defendant's motions to dismiss after the conclusion of the settlement program but "no later than the end of September of 2021." Tr. 3:21–22, ECF No. 179.

Immediately after the close of the settlement program, and on the eve of the Court's issuance of its Opinions and Orders on Defendant's motions to dismiss, a reporter raised with the Court a concern about the Undersigned's wife's ("Mrs. Watson") business, The Flag Lady's Flag Store (the "Store"), and its ties to Defendant. The reporter had asked whether the Court had disclosed to the parties the Store's business dealings with Defendant. As is explained below, disclosure of this fact was not required under the ethical rules. However, to answer the reporter's question, the Undersigned reviewed prior transcripts to determine whether he had nonetheless disclosed this fact at the time he

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

disclosed his status as an adjunct professor. Because the transcripts revealed that he had not, and because the reporter's question at least raised the *possibility* that the Court should consider whether there existed an appearance of impropriety, the Court held a hearing with the parties and permitted them ten days to file a motion to recuse if any party believed the Store's dealings with Defendant gave rise to an objective appearance of impropriety. Tr. 10:15–22, ECF No. 191.

Now, Plaintiffs represented by two attorney groups request the Undersigned's recusal based on: (1) the Undersigned's status as an adjunct professor at Moritz; (2) the Store's licensing contract with Defendant and Defendant's periodic purchases of merchandise from the Store; and (3) the Undersigned's and his wife's participation in the Buckeye Cruise for Cancer. Mot. Recuse, ECF No. 193, Case Nos. 2:18-cv-692 & 2:21-cv-2542; Mot. Recuse, ECF No. 50, Case Nos. 2:19-cv-2462, 2:19-cv-4746 & 2:21-cv-2562. Notably, counsel in various other related cases have informed the Court that they are *not* seeking recusal. Notice, ECF No. 16, Case No. 2:21-cv-2121; Notice, ECF No. 40, Case No. 2:20-cv-3817; Notice, ECF No. 20, Case No. 2:21-cv-2120; Notice, ECF No. 22, Case No. 2:21-cv-2527.

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

## II. FACTS UNDERLYING THE MOTIONS TO RECUSE

The Undersigned teaches Trial Practice at Moritz each Spring as an adjunct professor. The Undersigned is paid by Moritz for this service. Moritz is not a party to the underlying lawsuits and is not implicated in Plaintiffs' allegations of wrongdoing.

Mrs. Watson's mother founded the Store in 1984. Mrs. Watson purchased the Store from her mother on February 2, 2017. The Store has a licensing agreement with Defendant (among many other institutions), under which the Store may produce and sell products with Defendant's trademarks. The Store is one of 400 such licensees, and, as is typically the case with a licensing agreement, the Store pays Defendant a royalty (in this case 12%) on each purchase of a licensed product.

Separately, Defendant has purchased merchandise directly from the Store. The Store is one of 34,000 vendors used by Defendant. The Store and Defendant do not have any other contracts or understandings.[2] Neither the Store, Defendant's licensing agreements, nor Defendant's vendor relationships are at issue in the underlying lawsuits or implicated in Plaintiffs' allegations of wrongdoing. The Store will not be affected by the outcome of these proceedings.

---

[2] The *Garrett* and *Alf* Plaintiffs reference "certain financial payments" from Defendant to the Store. Mot. ¶ 26, ECF No. 193. The only payments from Defendant to the Store are pursuant to a purchase of merchandise from the Store.

Additionally, the Undersigned and Mrs. Watson have participated in the Buckeye Cruise for Cancer since its inception fourteen years ago. The Buckeye Cruise for Cancer is a fundraiser that benefits not the undergraduate university but rather The Ohio State James Comprehensive Cancer Center ("OSUCCC"). The Buckeye Cruise for Cancer is not sponsored by Defendant. OSUCCC is not a party to the underlying lawsuits, nor is it implicated in Plaintiffs' allegations of wrongdoing. The Undersigned attends the event in his individual capacity, not in his capacity as a federal judge. The Store also sells merchandise on the Buckeye Cruise for Cancer.

The Undersigned responds to each argument for recusal below.

## III.  STANDARD

A judge's recusal is governed by 28 U.S.C. § 455 and the Code of Conduct for United States Judges ("the Code").

28 U.S.C. § 455(b)(4) and the Code mandate a judge's recusal any time "[h]e knows that he . . . or his spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by an outcome of the proceeding." *See also* Canon 3(C)(1)(c).

"Recusal is not mandatory in other situations involving spousal business relationships that are less direct or consequential." Guide to Judiciary Policy,

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

Vol. 2, Ch. 2, Advisory Opinion No. 107. Rather, judges in those situations will consider "a number of facts and circumstances that must be evaluated on a case-by-case basis to determine, in accordance with Canon 3(C)(1), whether 'the judge's impartiality might reasonably be questioned.'" *Id.* This is because, wholly apart from instances in which recusal is mandatory due to financial instance, a judge should recuse from "any proceeding in which his impartiality might reasonably be questioned."[3] 28 U.S.C. § 455(a); Canon 3(C)(1).

That standard "is not based on the subjective view of a party, and rather imposes an objective standard: a judge must disqualify himself where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016) (internal quotation marks and citations omitted).

---

[3] In lieu of recusing when a judge's impartiality could reasonably be questioned, a judge may disclose the basis for disqualification on the record. If the parties confer outside the presence of the judge and agree in writing or on the record that the judge should not be disqualified, the judge need not recuse. Canon 3(D). Accordingly, the Court disclosed the Store's licensing agreement on the record and permitted the parties the opportunity to confer and notify the Undersigned whether they wish for him to recuse. This was done because, if all parties agreed the Undersigned should proceed, then the Undersigned would not need to consider whether his impartiality could reasonably be questioned because, regardless of the answer to that question, recusal would not be necessary. Because the parties did not come to a consensus on the recusal request, however, the Undersigned must determine whether the Undersigned's impartiality could reasonably be questioned.

The moving party bears the burden of justifying disqualification. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999).

Moreover, Canon 4 of the Code of Conduct governs a judge's participation in extrajudicial activities. "A judge may engage in extrajudicial activities, including . . . charitable . . . activities . . . . However, a judge should not participate in extrajudicial activities that . . . reflect adversely on the judge's impartiality." Canon 4. As the Commentary to the Code of Conduct explains, "[c]omplete separation of a judge from extrajudicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives." Commentary, Canon 4. "A judge may attend fund-raising events of law-related and other organizations, although the judge may not be a speaker, a guest of honor, or featured on the program of such an event." *Id.* Moreover, advisory ethics opinions construing Canon 4 acknowledge that "[j]udges . . . are generally permitted to participate in charitable activities, including making donations to charitable organizations, subject to certain restrictions on fundraising and other issues." Guide to Judiciary Policy, Vol. 2, Ch. 3, Compendium of Selected Opinions, § 4.2-1(p).

Ultimately, "[a]lthough a judge is obliged to disqualify himself when there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x

840, 842 (6th Cir. 2007) (internal quotation marks and citations omitted); *see also In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) ("Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited.").

The Court considers whether recusal is required under any of the above provisions. In performing this analysis, the Undersigned considers the statute and the Code, as well as both published and unpublished ethics opinions issued by the Committee on Codes of Conduct interpreting the Code. *See, e.g.*, Advisory Op. No. 49 (June 2009) ("Although the Committee on Codes of Conduct is not authorized to render advisory opinions interpreting §§ 455 and 144, Canon 3C of the Code of Conduct for United States Judges closely tracks the language of § 455, and the Committee is authorized to provide advice regarding the application of the Code.").

## IV. DISCUSSION

After careful consideration, the Undersigned concludes that neither his service as an adjunct professor at Moritz, the Store's business dealings with Defendant, nor the Undersigned's participation in the Buckeye Cruise for Cancer warrant recusal.

## 1. Serving as an adjunct professor does not require recusal.

Notwithstanding Plaintiffs' failure to object in the past two and a half years

to the Undersigned's status as an adjunct professor at Moritz, *see McKibben v.*

*Hamilton Cty.*, No. 99-3360, 215 F.3d 1327, at *6 (6th Cir. May 30, 2000),

Plaintiffs now assert that such service as an adjunct professor is a ground for

disqualification. Plaintiffs are incorrect.

The pertinent ethical opinion interpreting service as an adjunct professor

reads:

> A judge who teaches at a law school should recuse from all cases
> involving *that educational institution as party.* The judge should
> recuse (or remit) from cases involving the university, as well as those
> involving the law school, where the judge's impartiality might
> reasonably be questioned in view of the size and cohesiveness of the
> university, the degree of independence of the law school, the nature
> of the case, and related factors.

Guide to Judiciary Policy, Vol. 2, Ch. 3, Compendium of Selected Opinions,

§ 3.4-3(a) (emphasis added).

As multiple members of this Court have explained, this opinion is best

interpreted as requiring recusal only when the school at which the judicial officer

teaches is itself a party to the case. *Meng Huang v. Ohio State Univ.*, No. 2:19-

CV-1976, 2020 WL 8461547, at *2 (S.D. Ohio Oct. 26, 2020), *aff'd*, No. 2:19-CV-

1976, 2020 WL 8461560 (S.D. Ohio Nov. 4, 2020); *Szeinbach v. Ohio State*

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

Page 11 of 22

*University*, No. 2:08-cv-822, 2015 WL 12991136, at *2 (S.D. Ohio July 8, 2015). Here, Moritz is not a defendant to any of these suits.

Moreover, as those judicial members have explained, the relationship between Moritz and The Ohio State University undergraduate school does not warrant recusal from cases involving the undergraduate university when the judicial officer teaches at Moritz. In fact, Magistrate Judge Vascura recently explained at length why this provision does not require a judicial officer who teaches at the law school to recuse from a case in which the undergraduate institution is a party. *See Meng Huang*, 2020 WL 8461547, at *2.

As in *Meng Huang*, the § 3.4-3(a) factors here weigh against recusal. Specifically, Defendant is one of the largest universities in the country, and Moritz is "one small and virtually autonomous part." *Meng Huang*, 2020 WL 8461547 at *2. Additionally, Moritz is not involved in any of the allegations at issue in these cases. Therefore, the Undersigned's service as an adjunct professor at Moritz is not a ground for recusal.

## 2. The Store's licensing agreement and periodic sale of merchandise to Defendant does not require recusal.

Next, Plaintiffs argue that the Store's connection with Defendant mandates recusal. Again, the Court disagrees.

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

First, no business between the Store and Defendant constitutes a "financial interest" in either the subject-matter in controversy or in Defendant itself as defined by 28 U.S.C. § 455(b)(4) or Canon 3(C)(1)(c) of the Code of Conduct for United States Judges. Canon 3(C)(3)(c) defines "financial interest" as "ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party." Neither the Undersigned, Mrs. Watson, nor the Store own any interest in Defendant, and none serve as a director, advisor, or similar role to Defendant.

Nor does the Store have "any other interest that could be affected substantially by the outcome of the proceeding" as defined by those provisions. The subject-matter in controversy is entirely unrelated to the Store, and the outcome of these proceedings will not affect the Store in any way. Thus, recusal is not mandated under the "financial interest" provisions of § 455(b)(4) and Canon 3(C)(1)(c).

Turning to whether the Store's business interactions with Defendant nonetheless create an objective appearance of impropriety under § 455(a) and Canon 3(C)(1), the Undersigned finds that they do not.

"As a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated

proceeding before the judge usually does not require the judge's recusal." Guide

to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion No. 107. However,

> When a judge knows that a client of the judge's spouse or the
> spouse's business appears before the judge, the Committee has
> advised that the judge should evaluate certain factors to determine
> whether recusal is warranted. These factors include: (1) the spouse's
> personal role or lack of personal role in providing services to the client,
> (2) whether the services provided to the client are substantial and
> ongoing, (3) the nature of the client's relationship to the spouse or the
> spouse's business, and (4) the financial connection between the
> client, the business, and the judge's spouse (including the percentage
> of business revenue the client provides and the amount of
> compensation the spouse earns from the client). Additionally, judges
> should consider recusal whenever they become aware of
> circumstances suggesting that the hiring of the spouse or the
> spouse's business may have been influenced by the judge's position.

*Id.*

None of the moving Plaintiffs specifically explain how the licensing

agreement could create the appearance of impropriety, and the Court also finds

that it does not. The Store has similar licensing agreements with myriad

collegiate and professional sports teams, and Defendant also has similar

licensing agreements with 399 other manufacturers and sellers. Indeed, a simple

visit to the Store's website shows the Store sells merchandise for no less than

forty-two universities and colleges around the country as well as dozens of NFL

and MLB teams, among others. Neither the Store, Mrs. Watson, nor the

Undersigned receive any money directly from Defendant as a result of this

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

license. To the contrary, the Store pays Defendant a royalty fee for permission to use its trademarks. Thus, to the extent that Plaintiffs rely on the licensing agreement as a basis for recusal, such reliance is misplaced.

Next, Plaintiffs point to purchases Defendant made directly from the Store as a basis for recusal. When analyzing whether Defendant's periodic purchases from the Store create an appearance of impropriety, the Court considers the factors in Advisory Opinion 107, which apply whenever a client of a judge's spouse appears before the judge.

As a preliminary matter, however, the Undersigned wishes to correct some misstatements in moving Plaintiffs' motion. Some moving Plaintiffs state that "in approximately 2020," Defendant purchased flags directly from the Store as gifts to the incoming freshman class. *See, e.g.*, Mot. 10, ECF No. 50, Case No. 2:19-cv-2462. Plaintiffs further speculate that the sale of such flags totaled $339,426.82. *Id.* In reality, those purchases occurred in 2016 and 2017—before the first of these lawsuits was ever filed. Moreover, Plaintiffs' speculation overstated the true purchase price of the flags by hundreds of thousands of dollars.

The Court now considers the factors.

First, when Defendant has purchased items from the Store, those purchases have been made through Mrs. Watson. The advisory ethics opinion

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

states that "[W]hen the judge knows that his or her spouse is personally engaged in providing services to a client appearing before the judge . . . , an additional consideration is the degree of involvement of the spouse or the spouse's business." Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion 107(I)(B). "If the relationship to the client involves only an occasional or isolated transaction, recusal is not required unless some other particular fact or circumstance gives rise to reasonable questions about the judge's impartiality." *Id.* Here, since Mrs. Watson has owned the Store, Defendant has made isolated purchases. This is more like the types of occasional or isolated transactions that do not require recusal than the "exclusive arrangement[s]" or "substantial and ongoing relationship[s]" for which recusal has been advised. *Id.*

Second, and relatedly, Defendant's purchases from the Store are neither substantial nor ongoing. The Committee advises recusal '[w]hen a spouse is employed by or owns a business whose major or sustaining client appears before the judge," Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion 107(I)(C), which is not the case here. Since these cases have been filed, the sales to Defendant have never exceeded 0.89% of the Store's total sales in a given year. The Store and Defendant have no contract for continuing business. The Store is one of 34,000 of Defendant's vendors. Notice, ECF No. 194, Case No. 2:18-cv-692. Even when Defendant's direct purchases are added to sales of

licensed products to the public, the combined sale of such goods never exceeded 2.4% of the Store's total sales. It therefore simply cannot be said that Defendant is a "significant," "sustaining," or "sole" client of the Store, which is when the Committee advises recusal. To the contrary, these percentages are *de minimis*.

Third, Defendant and the Store have an arms-length business relationship, and Defendant and Mrs. Watson have no personal relationship. *See* Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion 107(I)(C) (advising that recusal may be warranted when a judge's spouse's business "serves as general counsel or in a managerial relationship to the client, rather than simply providing services in arms' length transactions").

Fourth, there is a minimal financial connection between the Store, Mrs. Watson, and Defendant. The Commission has found no reasonable appearance of impropriety existed even where the judge's spouse "earned a relatively small sales commission, in an ordinary, arms' length contract, from a party appearing before the judge in an unrelated proceeding." Guide to Judiciary Policy, Vol. 2, Ch. 2, Advisory Opinion 107(I)(D). On the other hand, a judge's impartiality might reasonably be questioned where a judge's spouse receives "a portion of client fees amounting to more than a small percentage of the spouse's income."

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

Page 17 of 22

*Id.* Here, Mrs. Watson does not earn *any* money directly from Defendant but instead takes a share of the total profits from the Store.

Financial contribution to a spouse's business, as opposed to the spouse directly, "takes on more significance when the spouse is a partner, shareholder, or owner of the business." *Id.* But even then, "a judge is not automatically disqualified when a client of the spouse's business appears in a proceeding, even if the spouse is a shareholder, partner, or owner[.]" *Id.* Rather, the advisory opinion focuses on whether the client is "[a] major or sustaining client" such that the spouse's income or the existence of the spouse's business might be materially threatened by departure of the client. *Id.* As explained above, Defendant's purchases represent a small percentage of the Store's sales. Defendant is not a major, sole, or sustaining client; and the Store's existence does not depend on retaining Defendant as an occasional customer.

Finally, there is no suggestion that Defendant's purchases from the Store were influenced in any way, shape, or form, by the Undersigned's position as a judge.

In other words, all the relevant factors from Advisory Opinion No. 107 weigh against finding an objective appearance of impropriety and, by extension, recusal. Although the Court is sensitive to Plaintiffs' subjective concerns, there is no objective appearance of impropriety given the facts that the Undersigned's

wife owns a business which sells, among many other things, Ohio State-licensed products to members of the public and that Defendant has purchased items directly from the Store.

### 3. The Undersigned's participation in the Buckeye Cruise for Cancer does not require recusal.

Plaintiffs also bring up the Undersigned's involvement with the Buckeye Cruise for Cancer. Mot. 11, ECF No. 50. Plaintiffs are correct that the Undersigned and his wife have donated money to this cause and that the Store has donated merchandise to this cause. The Undersigned and his wife also annually attend the Buckeye Cruise for Cancer. Plaintiffs are concerned that this philanthropic involvement is a "Possible Failed Disclosure" that warrants recusal. *Id.*

Plaintiffs' argument misses an important distinction: over the last fourteen years, the Buckeye Cruise for Cancer has raised twenty-five million dollars not for the undergraduate university but for OSUCCC. Importantly, even a direct donation to Defendant would not require recusal. *Cf. U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998) (collecting cases where judges did not abuse their discretion by not recusing even though they had made financial contributions to defendant universities). Here, though, the donations were not made to the undergraduate university; rather, they were given to

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

OSUCCC, an independent entity, which makes the donations "immaterial" to the need to recuse. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1091 (N.D. Cal. 2017).

To the extent that Plaintiffs are concerned that the Undersigned may have a personal bias or prejudice because they believe he is "vacationing with the [Defendant], Brutus the Buckeye, the Buckeye Cheerleaders, Alumni, and Numerous OSU Staff," the Court again notes that the Buckeye Cruise for Cancer is not organized by Defendant. Plaintiffs' insinuations that some attendees of the Buckeye Cruise for Cancer also donate to the undergraduate university and that the Undersigned may have discussed the pending lawsuits with such donors, *see* Mot. 12, ECF No. 50, are inflammatory and utterly baseless. The Undersigned's philanthropic efforts directed towards cancer research are permitted under Canon 4(C) and do not create for an objective person an appearance of impropriety under § 455(a) and Canon 3(C)(1) when it comes to lawsuits involving the undergraduate university.

## V. CONCLUSION

The United States Court of Appeals for the Second Circuit has aptly cautioned:

> That which is seen is sometimes merely a smokescreen. Judicial inquiry may not therefore be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy

access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal.

The test, as we have stated, is one of reasonableness, and the appearance of partiality portrayed in the media may be, at times, unreasonable. In such cases, the requirements of Section 455(a) are not met.

*In re Aguinda*, 241 F.3d 194, 202 (2nd Cir. 2001) (internal citation omitted). That caution applies here. It is unfortunate that someone attempted to detract from the merits of Defendant's pending motions to dismiss—and, perhaps more importantly, Plaintiffs' underlying claims—by redirecting focus onto the Court itself. But in so doing, that someone has made a mountain out of several molehills. The Undersigned's impartiality cannot reasonably be questioned, and Plaintiffs' motions for recusal are **DENIED**. Because the Court denies Plaintiffs' motions for recusal, it need not reach Plaintiffs' ancillary motions to transfer. The Clerk is **DIRECTED** to terminate the following motions:

- Case No. 2:18-cv-692: ECF No. 193.
- Case No. 2:19-cv-2462: ECF No. 50.
- Case No. 2:19-cv-4746: ECF No. 36.
- Case No. 2:21-cv-2562: ECF No. 16.

**IT IS SO ORDERED.**

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

Case No. 2:18-cv-692
Case No. 2:19-cv-2462
Case No. 2:19-cv-4746
Case No. 2:21-cv-2542
Case No. 2:21-cv-2562

Page 22 of 22